UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

*85*
*Attach 1-8.*

SHADY RECORDS, INC.,

Plaintiff,

-against-

SOURCE ENTERPRISES, INC., DAVID MAYS,
RAYMOND SCOTT p/k/a RAY BENZINO and
BLACK ENTERPRISE/GREENWICH STREET
CORPORATE GROWTH MANAGEMENT LLC,

Defendants.

SOURCE ENTERPRISES, INC.,

Counterclaimant,

-against-

SHADY RECORDS, INC. and MARSHALL
BRUCE MATHERS III p/k/a EMINEM,

Counterclaim Defendants.

Case No.: *04 X 72295 .*

**DECLARATION OF
THOMAS P. LANE**

*Robert H. Cleland.*

**FILED**

JUN 2 1 2004

CLERK'S OFFICE-DETROIT-PSG
U.S. DISTRICT COURT

I, THOMAS P. LANE, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a member of the law firm Thelen Reid & Priest LLP, counsel for Source

Enterprises, Inc. (the "Source"), David Mays (or "Mays") and Raymond Scott p/k/a Ray Benzino

(or "Benzino") (collectively, the "Source Parties"). I submit this Declaration to place before the

Court certain exhibits in support of the Source Parties' Memorandum of Law in Support of Their

Motion to Compel the Deposition Testimony of Gregory Wier.

2.  Annexed hereto as Exhibit 1 are selected deposition questions which were

objected to on the grounds of the Investigator Privilege by Gregory Wier's counsel during his

deposition on June 7, 2004.

3.     Annexed hereto as Exhibit 2 is a true and accurate copy of the Answer and Affirmative Defenses of Source Enterprises, Inc., David Mays, and Raymond Scott p/k/s Ray Benzino to the Amended/Supplemental Complaint of Shady Records, Inc., and Counterclaims of Source Enterprises, Inc.

4.     Annexed hereto as Exhibit 3 is a copy of Shady Records, Inc.'s Amended/Supplemental Complaint for Damages, Seizure of Masters and Injunctive Relief for Copyright Infringement.

5.     Annexed hereto as Exhibit 4 is a copy of Shady Records, Inc.'s Initial Disclosures Pursuant to Rule 26(a)(1).

6.     Annexed hereto as Exhibit 5 are copies of certain documents produced by Shady Records, Inc. which were used as exhibits at the June 7, 2004 deposition of Gregory Wier.

7.     Annexed hereto as Exhibit 6 is a copy of the May 11, 2004 Transcript of the deposition of Paul Rosenberg.

8.     Annexed hereto as Exhibit 7 is a true and accurate copy of the Subpoena and Affidavit of Service for the deposition of Gregory Wier.

9.     Annexed hereto as Exhibit 8 is a copy of the June 7, 2004 Transcript of the Deposition of Gregory Wier.

Dated: New York, New York
      June 18, 2004

_____
THOMAS P. LANE



EXHIBIT OMITTED PURSUANT TO STIPULATION OF
CONFIDENTIALITY AND PROTECTIVE ORDER





UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHADY RECORDS, INC.,

Plaintiff,

-against-

SOURCE ENTERPRISES, INC., DAVID MAYS,
RAYMOND SCOTT p/k/a RAY BENZINO and
BLACK ENTERPRISE/GREENWICH STREET
CORPORATE GROWTH MANAGEMENT LLC,

Defendants.

SOURCE ENTERPRISES, INC.,

Counterclaimant,

-against-

SHADY RECORDS, INC. and MARSHALL
BRUCE MATHERS III p/k/a EMINEM,

Counterclaim Defendants.

Case No.: 03 CV 9944 (GEL)

**JURY TRIAL DEMANDED**



## ANSWER AND AFFIRMATIVE DEFENSES OF SOURCE ENTERPRISES, INC., DAVID MAYS, AND RAYMOND SCOTT P/K/A RAY BENZINO TO THE AMENDED/SUPPLEMENTAL COMPLAINT OF SHADY RECORDS, INC. AND COUNTERCLAIMS OF SOURCE ENTERPRISES, INC.

Source Enterprises, Inc. ("Source Enterprises"), David Mays ("Mays") and

Raymond Scott p/k/a Ray Benzino ("Benzino") (collectively, the "Source Defendants"), by and

through their attorneys, as and for their Answer and Affirmative Defenses to the

Amended/Supplemental Complaint of Shady Records, Inc. ("Shady"), state as follows:



1.      The Source Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 1 of the Complaint, and therefore deny those allegations.

2.      The Source Defendants admit the allegations of paragraph 2 of the Complaint.

3.      The Source Defendants admit the allegations of paragraph 3 of the Complaint.

4.      The Source Defendants deny the allegations of paragraph 4 confirm.

5.      The Source Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 5 of the Complaint, and therefore deny those allegations.

6.      The Source Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 6 of the Complaint, and therefore deny those allegations.

7.      The Source Defendants admit that Black Enterprise LP is a shareholder in Source Enterprises confirm, and state that they otherwise are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 7 of the Complaint, and therefore deny those allegations.

8.      The Source Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 8 of the Complaint, and therefore deny those allegations.

9.      The Source Defendants admit the allegations of paragraph 9 of the Complaint.

2

NY #580301 v1

10.    The Source Defendants admit that Shady's Complaint purports to allege copyright infringement, arising under the Copyright Act, and related claims of declaratory judgment, injunction and unjust enrichment against the Source Defendants, all of which causes of action the Source Defendants deny.

11.    The Source Defendants admit that Shady purports to allege that this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367.

12.    The Source Defendants admit that Shady purports to allege that venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(a) and 1400(a) and that Source Enterprises' principal place of business is in New York County, State of New York.

13.    The Source Defendants admit the allegations of paragraph 13 of the Complaint.

14.    The Source Defendants admit the allegations of paragraph 14 of the Complaint.

15.    The Source Defendants deny the allegations of paragraph 15.

16.    The Source Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 16 of the Complaint, and therefore deny those allegations, except admit that Marshall Bruce Mathers III p/k/a Eminem ("Eminem") created certain compositions and recordings with additional co-authors.

17.    The Source Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 17 of the Complaint, and therefore deny those allegations.

18.    The Source Defendants are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 18 of the Complaint,

3

and therefore deny those allegations, except admit that Eminem created certain compositions and recordings with additional co-authors.

19.    There are no allegations contained in paragraph 19 of the Complaint, and therefore no response is required.

20.    The Source Defendants state that they are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 20 of the Complaint, and therefore deny those allegations.

21.    The Source Defendants deny the allegations of paragraph 21.

22.    The Source Defendants deny the allegations of paragraph 22.

23.    The Source Defendants deny the allegations of paragraph 23.

24.    The Source Defendants refer the Court to SRu #516-219, which speaks for itself.

25.    The Source Defendants state that they are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 25 of the Complaint, and therefore deny those allegations.

26.    The Source Defendants refer the Court to the relevant Form SR, which speaks for itself.

27.    The Source Defendants refer the Court to the relevant Form CA, which speaks for itself.

28.    The Source Defendants state that they are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 28 of the Complaint, and therefore deny those allegations.

29.    The Source Defendants deny the allegations of paragraph 29.

NY #580301 v1

30.     The Source Defendants deny the allegations of paragraph 30, but admit that in November 2003, Source Enterprises held a press conference where certain portions of a composition/recording was played.

31.     The Source Defendants deny the allegations of paragraph 31, except admit that Source Enterprises operates a website at http://www.thesource.com.

32.     The Source Defendants deny the allegations of paragraph 32, but Source Enterprises admits that it previously made the lyrics of certain compositions available on the company's website.

33.     The Source Defendants deny the allegations of paragraph 33, but admit that Eminem and Shady did not directly give the Source Defendants permission to reproduce, distribute, publicly perform or in any way publicly disclose or exploit the works at issue in this action on their website or at the televised press conference, or at any other time or place or in any other format or medium.  Further, the Source Defendants state that that they are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 33 of the Complaint, as to Ruby, and therefore deny those allegations.

34.     The Source Defendants deny the allegations of paragraph 34.

35.     The Source Defendants deny the allegations of paragraph 35.

36.     The Source Defendants deny the allegations of paragraph 36.

37.     The Source Defendants deny the allegations of paragraph 37.

38.     The Source Defendants deny the allegations of paragraph 38.

39.     The Source Defendants deny the allegations of paragraph 39, except admit that Eminem appeared on the cover of the February 2004 issue of *The Source Magazine*.

40.     The Source Defendants deny the allegations of paragraph 40.

5

41.  The Source Defendants deny the allegations of paragraph 41.

42.  The Source Defendants deny the allegations of paragraph 42 and refer the Court to the referenced letter, which speaks for itself.

43.  The Source Defendants deny the allegations of paragraph 43.

44.  The Source Defendants deny the allegations of paragraph 44.

45.  The Source Defendants deny the allegations of paragraph 45 and refer the Court to the referenced letter, which speaks for itself.

46.  The Source Defendants state that they are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 46 of the Complaint, and therefore deny those allegations.

47.  The Source Defendants state that they are without sufficient knowledge or information upon which to form a belief as to the truth of the allegations of paragraph 47 of the Complaint, and therefore deny those allegations.

48.  The Source Defendants deny the allegations of paragraph 48.

49.  The Source Defendants deny the allegations of paragraph 49.

50.  The Source Defendants deny the allegations of paragraph 50.

51.  The Source Defendants deny the allegations of paragraph 51.

52.  The Source Defendants refer the Court to the specific responses to allegations 1 through 51 which are hereby incorporated herein.

53.  The Source Defendants deny the allegations of paragraph 53.

54.  The Source Defendants deny the allegations of paragraph 54.

55.  The Source Defendants deny the allegations of paragraph 55.

56.  The Source Defendants deny the allegations of paragraph 56.

6

57.     The Source Defendants deny the allegations of paragraph 57.

58.     The Source Defendants deny the allegations of paragraph 58.

59.     The Source Defendants deny the allegations of paragraph 59.

60.     The Source Defendants deny the allegations of paragraph 60.

61.     The Source Defendants refer the Court to the specific responses to allegations 1 through 60 which are hereby incorporated herein.

62.     The Source Defendants refer the Court to the original TRO, dated December 15, 2003, for the terms thereof.

63.     The Source Defendants refer the Court to the hearing transcript, dated December 22, 2003, for the contents thereof, and to the modified TRO, dated December 23, 2003, for the terms thereof.

64.     The Source Defendants deny the allegations of paragraph 64, except admit that Source Enterprises produced a CD containing 20 seconds of recordings, as well as the words of third-parties critiquing and commenting on the 20 seconds of recordings.

65.     The Source Defendants deny the allegations of paragraph 65, except admit that Source Enterprises previously made the lyrics of certain compositions available on the company's website.

66.     The Source Defendants deny the allegations of paragraph 66, except admit that Source Enterprises included a CD in certain copies of the February 2004 edition of *The Source Magazine*.

67.     The Source Defendants deny the allegations of paragraph 67, except admit that Source Enterprises included a CD in certain copies of the February 2004 edition of *The Source Magazine*, for which the magazine cover price was $4.99 U.S.

7

68.     The Source Defendants deny the allegations of paragraph 68, except admit that certain copies of the February 2004 edition of *The Source Magazine* did not include a CD, for which the magazine cover price was in some cases $4.99 U.S. and in other cases $3.99 U.S.

69.     The Source Defendants deny the allegations of paragraph 69.

70.     The Source Defendants deny the allegations of paragraph 70.

71.     The Source Defendants deny the allegations of paragraph 71.

72.     The Source Defendants refer the Court to the specific responses to allegations 1 through 71 which are hereby incorporated herein.

73.     The Source Defendants deny the allegations of paragraph 73.

74.     The Source Defendants deny the allegations of paragraph 74.

75.     The Source Defendants deny the allegations of paragraph 75.

76.     The Source Defendants deny the allegations of paragraph 76.

77.     The Source Defendants deny the allegations of paragraph 77.

78.     The Source Defendants deny the allegations of paragraph 78.

79.     The Source Defendants deny the allegations of paragraph 79.

80.     The Source Defendants refer the Court to the specific responses to allegations 1 through 79 which are hereby incorporated herein.

81.     The Source Defendants deny the allegations of paragraph 81.

82.     The Source Defendants deny the allegations of paragraph 82.

83.     The Source Defendants deny the allegations of paragraph 83, but admit that Eminem and Shady did not directly give the Source Defendants permission to use the works at issue in this action.

84.     The Source Defendants deny the allegations of paragraph 84.

8

85.     The Source Defendants refer the Court to the specific responses to allegations 1 through 84 which are hereby incorporated herein.

86.     The Source Defendants deny the allegations of paragraph 86.

87.     The Source Defendants deny the allegations of paragraph 87.

88.     The Source Defendants deny the allegations of paragraph 88.

89.     The Source Defendants deny the allegations of paragraph 89.

90.     The Source Defendants refer the Court to the specific responses to allegations 1 through 89 which are hereby incorporated herein.

91.     The Source Defendants deny the allegations of paragraph 91.

92.     The Source Defendants deny the allegations of paragraph 92.

93.     The Source Defendants deny the allegations of paragraph 93.

94.     The Source Defendants deny the allegations of paragraph 94.

95.     The Source Defendants deny the allegations of paragraph 95.

### AS TO THE RELIEF DEMANDED

96.     The Source Defendants assert that Shady is not entitled to any of the relief requested.

### FIRST AFFIRMATIVE DEFENSE
#### (Failure To State A Claim)

97.     Shady's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
#### (Standing)

98.     Shady is barred from recovery to the extent that Shady lacks standing (i.e. to the extent that Shady is not an owner of the compositions/recordings at issue in this action).

NY #580301 v1

### THIRD AFFIRMATIVE DEFENSE
#### (Assignment)

99.     Shady is barred from recovery to the extent that Source Enterprises obtained an assignment from any co-owner, co-author and/or any third-party with rights in and to the compositions/recordings at issue in this action, and, therefore, is an owner of such works.

### FOURTH AFFIRMATIVE DEFENSE
#### (License)

100.    Shady is barred from recovery to the extent that Source Enterprises obtained a license from any co-owner, co-author and/or any third-party with rights in and to the compositions/recordings at issue in this action, and, therefore, is a licensee of such works.

### FIFTH AFFIRMATIVE DEFENSE
#### (Fair Use)

101.    Shady is barred from recovery because each of the Source Defendants alleged actions constituted fair use of the compositions/recordings at issue in this action.

### SIXTH AFFIRMATIVE DEFENSE
#### (Innocent Intent)

102.    Shady is barred from recovery because at all relevant times the Source Defendants' conduct was in good faith with non-willful intent.

### SEVENTH AFFIRMATIVE DEFENSE
#### (Unclean Hands)

103.    Shady is barred from recovery by the doctrine of unclean hands.

### EIGHTH AFFIRMATIVE DEFENSE
#### (Fraud On The Copyright Office)

104.    Shady is barred from recovery by its commission of fraud on the Copyright Office, as it knowingly, deliberately, willfully and purposefully misrepresented and

NY #580301 v1

failed to present to the U.S. Copyright Office material facts that, if known by the Copyright Office, would have required that the applications be rejected.

## NINTH AFFIRMATIVE DEFENSE
### (Misuse And/Or Abuse of Copyright)

105.    Shady is barred from recovery because it misused and/or abused its purported copyrights beyond the ordinary and proper protections the copyrights afford.

## TENTH AFFIRMATIVE DEFENSE
### (Invalidity of Copyright)

106.    Shady is barred from recovery as its copyright registrations are invalid.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Lack Of Subject Matter Jurisdiction)

107.    Shady is barred from recovery to the extent that the Court lacks subject matter jurisdiction over Shady's claims.

## TWELFTH AFFIRMATIVE DEFENSE
### (Equity Nature)

108.    To the extent that Shady is requesting monetary damages, fees, costs, or disbursements, those requests are precluded by the equity nature of the declaratory relief requested.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Section 504 Of The Copyright Act)

109.    Shady is barred from recovery, under Section 504 of the Copyright Act, for recovery of statutory damages, if any, for both musical compositions and sound recordings.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Single Act)

110.    Shady is barred from the recovery of damages, if any, for multiple acts of infringement.

NY #580301 v1

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Estoppel)

111.  Shady is barred from recovery by the doctrine of estoppel.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Waiver)

112.  Shady is barred from recovery by the doctrine of waiver.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Failure To Join Indispensable Parties)

113.  Shady is barred from recovery to the extent that Shady has failed to join necessary and indispensable parties.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Destruction of Value)

114.  Shady is barred from recovery to the extent that it rights under copyright, if any, extend from assignments and/or licenses which were granted effectively to destroy the value of such copyrights.

## COUNTERCLAIMS

Source Enterprises, Inc. ("Source Enterprises"), by its attorneys, as and for its counterclaims (the "Counterclaims") against Shady Records, Inc. ("Shady") and Marshall Bruce Mathers III p/k/a Eminem ("Eminem") alleges, with knowledge as to itself and otherwise upon information and belief, as follows:

## NATURE OF COUNTERCLAIMS AND RELIEF

1.  Source Enterprises brings these Counterclaims against Shady and Eminem seeking:  (1) a declaration from this Court that it is an owner of the relevant sound recordings and musical compositions; (2) a finding that Shady and Eminem committed fraud on the

NY #580301 v1

Copyright Office, and thus a declaration that the purported copyright registrations in the sound recordings "Oh Foolish Pride" and "So Many Styles" are invalid and unenforceable; (3) a finding that Shady and Eminem committed abuse of copyright, and thus a declaration that Shady and Eminem may not enforce their purported copyrights, even if valid, because they abused their copyright privileges; (4) damages for unjust enrichment; (5) the Source Enterprises' attorneys' fees and costs under 17 U.S.C. § 505; and (6) such other and further relief as the Court deems just and proper.

## PARTIES

2.      Source Enterprises is a Delaware corporation with its principal place of business located at 215 Park Avenue South, New York, New York 10003.  Source Enterprises writes and publishes a monthly magazine generally known as *The Source Magazine*, focusing on hip-hop music, culture and politics.

3.      Shady, a record company, is a New York domestic business corporation which maintains its principal place of business at 151 Lafayette Street, 6th Floor, New York, New York 10013.

4.      Eminem is an individual residing in the State of Michigan.  Eminem is a well-known rapper that, at all relevant times, controlled Shady.  Eminem is a principal and stockholder in Shady.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), 2201, 2202 and 1367.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), and 28 U.S.C. § 1400(a).

13

## DEMAND FOR JURY TRIAL

7.      Source Enterprises hereby demands a trial by jury of each of its

Counterclaims.

## FACTS

### Source Enterprises' Discovery Of Eminem's Racist Works

8.      *The Source Magazine* has been in publication for over fifteen years, and is

the nation's number one selling music magazine on newsstands, with a total audience of

approximately nine million readers each month.

9.      It is well known that *The Source Magazine* prides itself on taking strong

positions on critical issues affecting the hip-hop community, issues that are often not covered by

the mainstream media.

10.     *The Source Magazine* has from time-to-time reported on the well-known

rapper Eminem.

11.     Eminem, is generally regarded as one of the most famous rappers in the

world.  He is unique in that he is one of the few Caucasian rappers who has achieved a

significant level of commercial success in the hip-hop community within the last 10 years.

12.     Eminem portrays himself as having been born and raised in Detroit, fully

immersed in hip-hop culture and struggling until he triumphed in the music world.  Eminem has

created a public persona of allegiance to, and alliance with, the hip-hop community.  This

mystique has fostered the hip-hop community's acceptance of Eminem and his music, and

furthered his status as an icon in the hip-hop community, despite has race.

13.     Eminem is a public figure.

14

14.     In 2003, the Source Enterprises learned of certain racist statements made by Eminem, which directly conflict with his well-cultivated image. These racist statements undermine his position as a leader in the hip-hop community, and call into question his purported affinity for African American culture.

15.     The racist statements are embodied in certain sound recordings and musical compositions presently referred to as "Oh Foolish Pride" and "So Many Styles" (collectively, the "Works").

16.     Without limitation, "Oh Foolish Pride" was created by Eminem, DJs/producers Matt Ruby p/k/a DJ Buttafingaz ("DJ Buttafingaz") and Michael Ruby p/k/a Manix ("Manix"), and another unknown individual.

17.     Without limitation, "So Many Styles" was created by Eminem, James Deal p/k/a Chaos Kid ("Chaos Kid"), and DJs/producers DJ Buttafingaz and Manix.

18.     The Works were published repeatedly by owners and/or authors of the Works prior to any use of the Works by Source Enterprises.

### Source Enterprises' Acquisition Of The Works

19.     On October 24, 2003, Source Enterprises obtained rights under copyright in and to the Works by assignment from Ronald Bolos ("Bolos"), of Detroit, Michigan (the "October 24 Assignment").

20.     The October 24 Assignment provides:

In consideration of the Purchase Price (as set forth in paragraph 3 below), you [Bolos] hereby irrevocably grant, transfer and assign to [Source Enterprises], throughout the world and in perpetuity, the sole and exclusive ownership of the [audio master recording embodying certain raps] and all rights therein (including, without limitation, all copyrights therein).

15

NY #580301 v1

21.     The October 24 Assignment is signed by the owner of the copyright interests being conveyed, i.e. Bolos.

22.     Bolos obtained rights in and to the Works by way of a license from his friend Aaron Neiman ("Neiman").

23.     Neiman obtained rights in and to the Works by way of a license from a co-author/co-creator of the Works, DJ Buttafingaz.

24.     As one of the DJs/Producers of both of the Works, DJ Buttafingaz made independently copyrightable contributions to such Works and, therefore, qualified as an "author" of the joint works.

25.     In order to confirm that Source Enterprises obtained right, title and interest in and to the musical composition and sound recording copyrights in the Works, Source Enterprises also entered into an additional assignment agreement on November 4, 2004 (the "November 4 Assignment"), with both Bolos and Neiman, the individual who transferred the *Basement Tapes* from DJ Buttafingaz to Bolos.

26.     In the November 4 Assignment both Bolos and Neiman reaffirmed the transfer of rights in and to the Works to Source Enterprises.

27.     In fact, Bolos represents in the October 24 Assignment:

[I] have the right to enter into this Agreement and to grant all of the rights herein granted ... The Recording is free of all liens and encumbrances, and no exploitation of the Recording by [Source Enterprises] will violate or infringe upon the rights of any person or entity.

28.     Even if Source Enterprises did not obtain rights in and to the Works by assignment, at all relevant times Source Enterprises had rights in and to the Works as a non-exclusive licensee by way of license from DJ Buttafingaz to Neiman and then with Bolos.

16

## Source Enterprises' Use Of The Works

29.    After Source Enterprises obtained rights in and to the Works, and pursuant to its fair use rights, in an effort to report on the Works, Source Enterprises made certain portions of the Works available to the public.

30.    The existence of the Works had become a newsworthy event – indeed one of the most newsworthy events in the hip-hop community.

31.    The public was shocked to learn that Eminem had co-authored works including lyrics such as:

> Black girls only want your money cause they're dumb chicks ...
> Don't date a black girl, take it as a diss ... Black girls and white girls just don't mix, because black girls are dumb and white girls are good chicks ... So I'ma bust another rhyme about this black girl she turned out to be a fucking wack girl ... I'll get straight to the point, black girls are bitches.  (from "Oh Foolish Pride")

> 'Cause I don't like that nigger shit. (from "So Many Styles")

## Improper Actions of Shady and Eminem

32.    In an effort to suppress facts, silence Source Enterprises and to censor its efforts to report about the Works (and the racist sentiments embodied therein), Shady and Eminem filed copyright applications for the sound recordings of "Oh Foolish Pride" and "So Many Styles."

33.    The object of the course of conduct of Shady and Eminem was to maintain the appearance of and/or attempt to maintain sole control over the rights in the Works.

34.    Specifically, on November 25, 2003, Plaintiff filed a copyright application in the sound recording "Oh Foolish Pride" stating that Shady was the author of the work, as a work for hire, and that Shady, c/o Interscope Records (Div. of UMG Recordings, Inc.) was the copyright claimant or owner.

NY #580301 v1

35.    Then on December 11, 2003 Shady filed a copyright application in the sound recording "So Many Styles" stating that Eminem was the author of the work and that Shady, c/o Interscope Records (Div. of UMG Recordings, Inc.) was the copyright claimant or owner.

36.    On December 11, 2003, Shady and Eminem also filed a correction form (a CA Form) for the sound recording "Oh Foolish Pride" purportedly correcting certain information stated in the original SR Form.

37.    Specifically, Shady and Eminem amended the authors stated on the original SR Form for "Oh Foolish Pride," to list both Eminem and Ruby as authors, and amended the means by which Shady claimed to own the underlying recording, i.e. changing the form to provide for Shady's ownership of the recording by assignment.

38.    At no time did either Shady or Eminem file any copyright applications for the musical compositions (on a Form PA) for either "Oh Foolish Pride" and "So Many Styles."

39.    Shady and Eminem deliberately, willfully and purposefully filed the original application for "On Foolish Pride" with the knowledge that Shady was neither the author, nor the claimant of the recording (as a work for hire).

40.    In addition, Shady and Eminem knowingly, deliberately, willfully and purposefully omitted additional co-authors from all of the copyright applications that were filed, including, without limitation, DJ Buttafingaz (as a co-author of both Works), Chaos Kid (as a co-author of "So Many Styles") and another unknown individual (as a co-author of "Oh Foolish Pride").

41.    All of the copyright applications contained information which was factually inaccurate.

NY #580301 v1

42.     Shady and Eminem knowingly, deliberately, willfully and purposefully caused such inaccuracies when they misrepresented and failed to present to the U.S. Copyright Office material facts that, if known, would have required that the applications be rejected.

43.     The misrepresentations and omissions by Shady and Eminem were knowing, deliberate, willful and for the purpose of misleading the Copyright Office.

44.     The Copyright Office relied on the inaccuracies, misrepresentations and omissions of Shady and Eminem when the Copyright Office granted the copyright applications and issued copyright certificates for the recordings of the Works.

45.     These copyright filings were made in response to Source Enterprises' news reports regarding the Works, as Shady and Eminem admit that there was no intention to ever distribute or release the Works.

46.     In addition to filing fraudulent copyright applications, Shady and Eminem from time to time have also knowingly and willfully made false statements to the press about the true identity of the co-authors of the Works.

47.     On December 15, 2003, Shady filed suit against the Source Enterprises for copyright infringement, and related claims.

48.     The forgoing actions of Shady and Eminem have caused injury and damage to Source Enterprises.

49.     The forgoing actions of Shady and Eminem have resulted in a benefit to both Shady and Eminem.

19

## FIRST COUNTERCLAIM
### (Declaratory Judgment)

50. Source Enterprises incorporates by reference each and every allegation set forth in paragraphs 1 through 49 above, as if set forth here in full.

51. The Source Enterprises is an owner of the Works.

52. There is an actual case and controversy between Source Enterprises and Shady, arising under the federal copyright law, regarding ownership of the Works.

53. As a result, absent declaratory relief, Source Enterprises will suffer continued harm.

54. Based on the foregoing allegations, and to avoid confusion in the marketplace and further damage to Source Enterprises, this Court should declare that Source Enterprises is an owner of the Works by assignment and/or as a non-exclusive licensee.

55. This Court should also award Source Enterprises reasonable attorneys' fees and costs under 17 U.S.C. § 505.

56. Source Enterprises has no adequate remedy at law.

## SECOND COUNTERCLAIM
### (Fraud On The Copyright Office)

57. Source Enterprises incorporates by reference each and every allegation set forth in paragraphs 1 through 56 above, as if set forth here in full.

58. All of the copyright applications filed by Shady and Eminem contain information which is factually inaccurate.

59. Shady and Eminem knowingly, deliberately, willfully and purposefully caused such inaccuracies when they misrepresented and failed to present to the U.S. Copyright Office material facts that, if known, would have required that the applications be rejected.

NY #580301 v1

60. The misrepresentations and omissions by Shady and Eminem were knowing, deliberate, willful and for the purpose of misleading the Copyright Office.

61. The Copyright Office relied on the inaccuracies, misrepresentations and omissions of Shady and Eminem when the Copyright Office granted the copyright applications and issued copyright certificates for the recordings of the Works.

62. Further, Source Enterprises has been prejudiced, and suffered damages, as a result of the fraudulent actions of Shady and Eminem.

63. Based on the foregoing allegations, this Court should find that Shady and Eminem committed fraud on the Copyright Office and declare that the copyright registrations in the sound recordings "Oh Foolish Pride" and "So Many Styles" are invalid and unenforceable.

64. This Court should also award Source Enterprises reasonable attorneys' fees and costs under 17 U.S.C. § 505.

## THIRD COUNTERCLAIM
### (Misuse And/Or Abuse of Copyright)

65. Source Enterprises incorporates by reference each and every allegation set forth in paragraphs 1 through 64 above, as if set forth here in full.

66. The purpose of granting copyright protection is to promote the progress of science and useful arts.

67. Shady and Eminem engaged in a course of conduct intended to suppress facts, silence Source Enterprises and to censor Source Enterprises' efforts to report on the Works and the racist sentiments embodied therein.

68. The object of the course of conduct of Shady and Eminem was to maintain the appearance of and/or attempt to maintain sole control over the rights in the Works.

21

69.     Shady and Eminem overexertended their intellectual property rights in the Works.

70.     By their actions Shady and Eminem misused and abused their purported copyrights, beyond the ordinary and proper protections copyright law affords, in order to prevent Source Enterprises from reporting on issues that are of great importance to the public.

71.     In so doing, Shady and Eminem offended the public policy behind copyright law.

72.     The actions of Shady and Eminem constitute misuse and/or abuse of copyright.

73.     Based on the foregoing allegations, this Court should declare that Shady and Eminem may not enforce the purported copyrights in the present case, even if valid, because they abused their copyright privileges.

74.     This Court should also award Source Enterprises reasonable attorneys' fees and costs under 17 U.S.C. § 505.

## FOURTH COUNTERCLAIM
### (Unjust Enrichment)

75.     Source Enterprises incorporates by reference each and every allegation set forth in paragraphs 1 through 74 above, as if set forth here in full.

76.     The improper actions taken by Shady and Eminem, as set forth herein, have resulted in a benefit to both Shady and Eminem.

77.     Shady and Eminem have retained such benefit without adequately compensating Source Enterprises, an assignee and/or licensee of the Works.

78.     Shady and Eminem should not in equity and good conscience be permitted to retain such benefit.

22

79.     As a result of the retention of such benefit, Shady and Eminem have been unjustly enriched and are jointly and severally liable to Source Enterprises.

80.     As a result of the unjust enrichment of Shady and Eminem, Source Enterprises has incurred damages in an amount to be determined at trial, plus applicable interest, attorneys' fees and costs.

WHEREFORE, Source Enterprises respectfully request that this Court enter judgment:

A.     On the First Counterclaim, for a declaration that Source Enterprises is an owner of the Works;

B.     On the Second Counterclaim, finding that Shady and Eminem committed fraud on the Copyright Office, and for a declaration that the copyright certificates in the sound recordings "Oh Foolish Pride" and "So Many Styles" are invalid and unenforceable;

C.     On the Third Counterclaim, a finding that Shady and Eminem committed abuse of copyright, and for a declaration that Shady and Eminem may not enforce the purported copyrights in the present case, even if valid, because they abused their copyright privileges;

D.     On the Fourth Counterclaim, for damages in an amount to be determined at trial, plus applicable interest;

E.     For Source Enterprises' attorneys' fees and costs; and

F.     Awarding such other and further relief as the Court deems just and proper.

NY #580301 v1

Dated: New York, New York
February 1, 2004

Respectfully submitted,

THELEN REID & PRIEST, LLP

By: _____
Michael S. Elkin (ME 2300)
Thomas P. Lane (TL 8983)
Hermann Ferre (HF 3786)
Deborah L. Ander (DA 4985)

875 Third Avenue
New York, New York 10022
Phone:        (212) 603-2000
Facsimile:   (212) 603-2001

-and-

THE McMILLAN FIRM

By: _____
Londell McMillan (LM 5119)
Frank C. Salzano (FS 4861)

156 West 56th Street, 10th Floor
New York, New York 10019
Phone:        (212) 399-8900
Facsimile:   (212) 399-0337

Attorneys for Defendants Source Enterprises, Inc.,
David Mays and Raymond Scott p/k/a Ray Benzino
and for Counterclaimant Source Enterprises, Inc.

## DEMAND FOR JURY TRIAL

Source Enterprises hereby demands a trial by jury of each of its Counterclaims.

Dated: New York, New York
      February 17 2004

                           Respectfully submitted,

                           THELEN REID & PRIEST, LLP

                         By: _____
                            Michael S. Elkin (ME 2300)
                            Thomas P. Lane (TL 8983)
                            Hermann Ferre (HF 3786)
                            Deborah L. Ander (DA 4985)

                            875 Third Avenue
                            New York, New York 10022
                            Phone:     (212) 603-2000
                            Facsimile:  (212) 603-2001

                                -and-

                         THE McMILLAN FIRM

                         By: _____
                            Londell McMillan (LM 5119)
                            Frank C. Salzano (FS 4861)

                            156 West 56th Street, 10th Floor
                            New York, New York 10019
                            Phone:     (212) 399-8900
                            Facsimile:  (212) 399-0337

                      Attorneys for Counterclaimant Source Enterprises,
                      Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHADY RECORDS, INC.,

                          Plaintiff,

            -against-

SOURCE ENTERPRISES, INC., DAVID MAYS,
RAYMOND SCOTT p/k/a RAY BENZINO and
BLACK ENTERPRISE/GREENWICH STREET
CORPORATE GROWTH MANAGEMENT LLC,

                       Defendants.

SOURCE ENTERPRISES, INC.,

                    Counterclaimant,

            -against-

SHADY RECORDS, INC. and MARSHALL
BRUCE MATHERS III p/k/a EMINEM,

                Counterclaim Defendants.

Case No.: 03 CV 9944 (GEL)

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK  )

       Deborah L. Ander, being duly sworn, deposes and says:  I am not a party to this action,

am over 18 years of age, and am employed at Thelen Reid & Priest LLP, 875 Third Avenue,

New York, New York 10022.

       On the 17th day of February 2004, I caused to be served the Answer and Affirmative

Defenses of Source Enterprises, Inc., David Mays, and Raymond Scott p/k/a Ray Benzino to the

Amended/Supplemental Complaint of Shady Records, Inc. and Counterclaims of Source

Enterprises, Inc., as well as Source Enterprises, Inc. Rule 7.1 Statement, by having true and

correct copies of the same sent by hand to:

Donald N. David, Esq.
FISCHBEIN•BADILLO•WAGNER•HARDING
909 Third Avenue
New York, New York 10022

Counsel for Plaintiff Shady Records, Inc.

-and-

Kenneth A. Plevan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036

Counsel for Defendant Black Enterprise/Greenwich
Street Corporate Growth Management LLC


_Deborah L. Ander_
Deborah L. Ander


Sworn to me on this
17th day of February, 2004

_Sherri Caspi_
Notary Public

SHERRI CASPI
Notary Public, State of New York
No. 01CA4832834
Qualified in Suffolk County
Commission Expires July 31, 2005

2



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

SHADY RECORDS, INC.,                        :

                Plaintiff,          :

              v.                       :

SOURCE ENTERPRISES, INC., DAVID MAYS,    :
RAYMOND SCOTT p/k/a RAY BENZINO, and      :
BLACK ENTERPRISE/GREENWICH STREET        :
CORPORATE GROWTH MANAGEMENT LLC,          :

              Defendants.       :

------------------------------------------------------- x

                    CASE NO. 03 CV.9944

                    AMENDED/SUPPLEMENTAL
                    COMPLAINT FOR DAMAGES,
                    SEIZURE OF MASTERS AND
                    INJUNCTIVE RELIEF FOR
                    <u>COPYRIGHT INFRINGEMENT</u>

Plaintiff, by FISCHBEIN·BADILLO·WAGNER·HARDING, its attorneys, for its complaint, alleges:

### JURISDICTION AND VENUE

1.     Plaintiff Shady Records, Inc. ("Shady Records") is a New York domestic business corporation which maintains its principal place of business at 151 Lafayette Street, 6th Floor, New York, New York 10013.

2.     Upon information and belief, Defendant Source Enterprises, Inc. ("Source Enterprises") is a Delaware corporation registered to do business as a foreign business corporation with the New York State Department of State and maintains its principal place of business at 215 Park Avenue South, New York, New York 10003.

3.     Upon information and belief, Defendant David Mays ("Mays") is an individual residing in the State of New York and in this judicial district and is the Chief Executive Officer and an owner of Source Enterprises.

THELEN REID AND PRIEST, LLP
875 THIRD AVENUE
NEW YORK, NY 10022-6225

FEB 1 3 2004

RECEIVED

392830.1

4.      Upon information and belief Defendant Raymond Scott p/k/a Ray Benzino ("Benzino") is an individual residing in the State of New York and in this judicial district and is an owner of Source Enterprises.  Source Enterprises, Mays and Benzino are sometimes collectively referred to herein as the "Source Defendants."

5.      Upon information and belief, BELLC is a limited liability company organized under the laws of Delaware and maintains its principal place of business at 850 Third Avenue, New York, New York.

6.      Upon information and belief, Defendant Black Enterprise/Greenwich Street Corporate Growth Management LLC ("BELLC") is the agent for and manages the affairs of Black Enterprise/Greenwich Street Corporate Growth Management LP ("BELP").

7.      Upon information and belief, Black Enterprise LP is a shareholder in Source Enterprises.

8.      Upon information and belief, the BELLC is and has been in a position to prevent the other Defendants from committing the acts complained of in this complaint.

9.      Upon information and belief, Source Enterprises is the owner of the Hip-Hop industry magazine known as "The Source."

10.     This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, and for the related claims of declaratory judgment, injunction and unjust enrichment.

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

392830.1                                    2

12.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and 28 U.S.C. § 1400(a) because Defendant Source Enterprises, Inc. maintains its principal place of business in New York County, State of New York.

## BACKGROUND

13.      "Eminem" a/k/a Marshall Bruce Mathers III (hereinafter "Eminem") is a nationally known rap recording artist and is a principal and stockholder of Plaintiff.

14.      Upon information and belief, Source Enterprises not only publishes "The Source," but also operates a website at www.thesource.com.

15.      Upon information and belief, over the years, The Source Defendants have sought to capitalize on Eminem's popularity and his position as today's number one selling hip-hop artist.

## CREATION OF THE COMPOSITIONS AND RECORDINGS IN ISSUE

16.      In or about 1989, Eminem co-authored with Michael Ruby, p/k/a "Mannix," a certain composition (the "First Composition") which they then recorded (the "First Recording"), in the basement of a home in Detroit, Michigan.

17.      At the time that musical composition was untitled, but it has since been entitled *Oh Foolish Pride*.

18.      In or about 1989, Eminem created a different composition (the "Second Composition") which he then recorded (the "Second Recording"). At the time that musical composition was untitled, but it has since been entitled "So Many Styles."

19.      Collectively, the First Composition and Second Composition are referred to herein as the "Compositions." Collectively, the First Recording and Second Recording are referred to herein as the "Recordings."

20. The respective interests of Eminem and Ruby in the Compositions and Recordings have been assigned to Plaintiff.

21. The Recordings have never been reproduced, distributed (i.e., exploited or released to the public) nor publicly performed by or under the authorization of Eminem, Ruby or by Plaintiff, the copyright owner of the Compositions and the Recordings.

22. Eminem, Ruby or Plaintiff have never authorized the reproduction, distribution or release of the Compositions or Recordings, nor any public performance of these works, nor granted anyone permission to do so.

23. There has been no authorized (first or any) publication or distribution of the Compositions or Recordings.

## REGISTRATION OF
## THE COMPOSITIONS AND RECORDINGS

24. An application on FORM SR for the First Composition and First Recording (i.e., "words, music, performance and recording") has been filed with and was registered by the United States Copyright Office as SRu #516-219. A copy of said registration certificate is annexed hereto as Exhibit "A" and by reference made a part hereof.

25. Upon information and belief, there have been no prior copyright applications made by anyone else with the United States Copyright Office for the First Composition or First Recording prior to Plaintiff's filing of its application.

26. An application on FORM SR for the Second Composition and Second Recording (i.e., "words, music, performance and recording") has been filed with and was registered by the United States Copyright Office as Sru #515-208. A copy of said registration is annexed hereto as Exhibit "B."

27.    An application on FORM CA for the First Composition and First Recording has been filed and was registered by the United States Copyright Office as SRu 515-209. A copy of said amendment is annexed hereto as Exhibit "C."

28.    Upon information and belief, there have been no prior copyright applications made by anyone else with the United States Copyright Office for the Second Composition or Second Recording prior to Plaintiff's filing of its application.

## DEFENDANTS' CONVERSION
## OF PLAINTIFF'S INTELLECTUAL PROPERTY

29.    Upon information and belief, Defendants improperly and illegally obtained a copy of the Recordings. The illegal copy of the First Recording is referred to herein as the "First Unauthorized Copy." The illegal copy of the Second Recording is referred to herein as the "Second Unauthorized Copy." The First Unauthorized Copy and the Second Unauthorized Copy are collectively referred to herein as the "Unauthorized Copies."

30.    On or about November 18, 2003, Defendants held a televised press conference where the First Unauthorized Copy was played for the public to hear.

31.    Furthermore, Source Enterprises' website, located on the World Wide Web at http://www.thesource.com provided, by unauthorized distribution and/or making available, the complete Unauthorized Copies for its visitors to hear (i.e., by public performance – digital transmission) and even download (by unauthorized reproduction). A true and correct printout of the Defendant's website promotion of the Unauthorized Copies is annexed hereto as Exhibit "D" and by reference made a part hereof.

32.    Furthermore, Source Enterprises' website has also provided the lyrics of the Compositions for visitors to read and copy.

33.     Neither Ruby, Eminem nor Shady Records gave the Defendants permission to re-produce, distribute, publicly perform or in any way publicly disclose or exploit the Compositions or the Unauthorized Copies on their website or at the televised press conference held by Defen-dants on or about November 18, 2003, or at any other time or place or in any other format or me-dium.

34.     Plaintiff is informed and believes, and on that basis alleges, that Defendant Source Enterprises has created (illegally reproduced) a Compact Disc (CD) embodying the First Unau-thorized Copy.

35.     Upon information and belief, Plaintiff is also informed that Defendants may have created (illegally reproduced) copies of the Second Unauthorized Copy on the same CD.

36.     Upon information and belief, Defendants have further illegally produced nearly 500,000 copies of the album containing the Unauthorized Copies (the "Illegal CD") and is fur-ther preparing to illegally distribute these copies to the public.  Either or both of the acts of re-production and distribution violates Plaintiff's exclusive copyright rights in 17 U.S.C. § 106.

## DEFENDANTS' PLANNED RELEASE OF THE ILLEGAL CD

37.     Upon information and belief, at the time of the commencement of this action, De-fendant Source Enterprises intended to publish, that is, release and distribute the Illegal CD in its February 2004 issue of The Source magazine, which was expected be on newsstands across the United States in January 2004.

38.     Upon information and belief, Defendants at the time of the commencement of this action, intended to include the Illegal CD in the February 2004 issue of The Source for their commercial gain, hopefully increasing the sales of their magazine due to the inclusion of the Il-legal CD.

392830.1                                    6

39.     Upon information and belief, at the time of the commencement of this action, Defendants were planning to use Eminem's name and image on the cover of the February 2004 issue of The Source to announce the "release" of this unauthorized Composition(s) and Recording(s).

40.     Plaintiff is informed and believes, and on that basis alleges, that the effect of Defendants' release of the Illegal CD will be to deprive Plaintiff (and its principals) of its intellectual property and, more particularly, the right to exploit that intellectual property in the fashion and at a time, if ever (i.e., to first publish), determined by the copyright holder.

41.     The natural, probable and foreseeable result of Defendants' wrongful conduct has been and will continue to be to deprive Plaintiff of its right to control the reproduction and distribution of the Recordings in a manner so as to maximize artistic and financial rewards to Plaintiff.

42.     Plaintiff caused its counsel to send Source Enterprises a letter demanding that Source Enterprises cease and desist from its intended course of conduct, but there was no response. It is clear that, having received such a letter, Defendants' continued infringement was and is both deliberate and willful.

43.     Upon information and belief, the BELLC had and has the right and the ability to control and supervise the conduct of Source Enterprises, both as investor and through representation on the Board of Directors of Source Enterprises.

44.     Upon information and belief, through its ability to control the actions of Source Enterprises, the BELLC has and had the ability to control the infringing conduct, but has not done so; and similarly has and had the ability to block the infringement of the copyright work and police the conduct of Source Enterprises, but failed to do so.

45.   Plaintiff has also caused its counsel to send BELLC a letter demanding that it exert its influence to prevent the other Defendants from engaging in the illegal course of conduct alleged herein, but prior to commencement of this action there was no response. (the "Cease and Desist Letter") It is clear that, having received such a letter, BELLC has knowingly and willfully acquiesced in the illegal actions of the other Defendants.

46.   Upon information and belief, after receipt of the Cease and Desist Letter, BELLC did nothing to cause the personnel responsible for the infringing activities to stop their conduct, although BELLC could have done so.

47.   Upon information and belief, BELLC has failed to act because it has an obvious and direct financial interest, through BELP, in the exploitation of the copyrighted material as a means to expand the circulation of The Source, and thereby increase the value of its investment in Source Enterprises.

48.   Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants intend to continue their course of conduct and to wrongfully use, and willfully infringe upon, sell and otherwise profit from Plaintiff's Compositions and Recordings and works derived from them.

49.   As a direct and proximate result of the acts of the Defendants alleged above, Plaintiff has already suffered irreparable damage and will suffer even greater injury if Defendants are allowed to steal Plaintiff's property and callously use that property for their own benefit.

50.   Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants have caused, and will cause in the future, by their conduct.

51.    Plaintiff will continue to suffer irreparable damage until Defendants' actions alleged above are enjoined by this Court.

## COUNT I

### Federal Copyright Infringement

### (17 U.S.C. §§ 101 *et seq.*)

52.    Plaintiff repeats and realleges the allegations of paragraphs "1" through "51."

53.    Plaintiff is the lawful and sole owner of the copyright to the Compositions and Recordings.

54.    Defendants have not been granted a license to reproduce, distribute, publicly perform or in any way use, compile or exploit the Compositions or Recordings by Plaintiff, nor has any license been granted to anyone else.

55.    By their actions alleged above, Defendants have infringed and will continue to infringe Plaintiff's copyrights in and relating to the Compositions and Recordings by reproducing, distributing, publicly performing, making available, and placing upon the market products which are in violation of Plaintiff's copyrights in the Compositions and Recordings.

56.    Plaintiff is entitled to an injunction restraining Defendants, their agents and employees, and all persons acting in concert with them, from engaging in any further such acts in violation of the copyright laws and infringements of Plaintiff's rights thereunder.

57.    Defendants' direct and willful acts of infringement will cause irreparable harm to Plaintiff unless such conduct is preliminarily and permanently enjoined, since the reproduction and distribution, of a previously unreleased musical composition has a special and unique value in the music industry.

58.    Further, upon information and belief, the release of the Unauthorized Copies may create confusion on the part of persons desiring to release their own version of, or to otherwise

392830.1                                    9

exploit, the Composition by causing them to believe they have the right to do so under the compulsory licensing provisions of 17 U.S.C § 115, when in fact no such right exists.

59.    Plaintiff is further entitled to recover from Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants' acts of infringement alleged above.  At present, the amount of such damages, gains profits and advantages cannot be fully ascertained by Plaintiff, but are reasonably believed to exceed $75,000.

60.    Plaintiff has no adequate remedy at law.

## COUNT II

### Federal Copyright Infringement

### (17 U.S.C. §§ 101 *et seq.*)

61.    Plaintiff repeats and realleges the allegations of paragraphs "1" through "60."

62.    At the time of the commencement of this action, the Court enjoined Defendants from using the Compositions and Recordings for any purposes whatsoever ("OTRO")

63.    At a hearing held on December 22, 2003, the Court *preliminarily* determined that Defendants should be allowed the "fair use" of the Compositions and Recordings, but only to the extent of allowing Defendants to publish 20 seconds of the Recordings and 8 lines of the Compositions.  On December 23, 2003, the Court issued an Order modifying the OTRO to allow Defendants to publish 20 seconds of the Recordings and to use 8 lines of the Compositions.

64.    Subsequent thereto, Defendants produced a CD containing 20 seconds of Recordings, as well as the words of third parties purporting to critique and comment upon the 20 seconds excerpted from the Recordings (the "Infringing CD").

65.    Furthermore, Defendants continued to make the entire Composition (lyrics) available for download on their website.

66.     Thereafter, Defendants included the Infringing CD in some, but not all, of the copies of the February 2004 edition of The Source magazine.

67.     Those issues of the February 2004 edition of The Source magazine that contained the Infringing CD, were sold at a newsstand price of $4.99 per copy.

68.     Those issues of the February 2004 edition of The Source magazine that did not contain the Infringing CD, were sold at a newsstand price of $3.99 per copy, or $1.00 less than those copies that contained the infringing CD.  In effect, Defendants sold the infringing CD for $1.00 per disk.

69.     By reason of the foregoing, Defendants' use of the Recordings was not a "fair use" within the meaning of 17 U.S.C. § 107, and instead constituted an illegal infringement of Plaintiff's copyrighted works.

70.     By reason of the foregoing, Plaintiff is entitled to recover profits realized by Defendants as a result of their commercial exploitation of Plaintiff's copyrighted Compositions and Recordings.

71.     By reason of the foregoing, Plaintiff is entitled to recover statutory damages from the Defendants.

## COUNT III

### Declaratory Judgment

72.     Plaintiff repeats and incorporates the allegations of paragraphs "1" through "71."

73.     There presently exists an actual and justiciable controversy between the parties arising under the federal copyright law involving the question of whether there has been a lawful "first use" of the Compositions and/or Recordings.

74.     Plaintiff is presently the sole copyright owner of the Compositions and/or Recordings.

75.     Neither Plaintiff, nor its assignors, has ever authorized the publication or first use of the Compositions and/or Recordings in the public forum.

76.     Presently, and due to Defendants' actions, there is likelihood of confusion in the marketplace as to whether there has been a *legal* first publication or first use of the Compositions and/or Recordings by the copyright owner.

77.     Absent declaratory relief, Plaintiff will suffer additional harm, as well as harm to its reputation.

78.     To avoid confusion in the marketplace and further damage to Plaintiff, this Court should declare that there has been no *legal* first use or publication of the Compositions and/or Recordings.

79.     Plaintiff has no adequate remedy at law.

## COUNT IV

### Injunction Against All Defendants

80.     Plaintiff repeats and incorporates the allegations of paragraphs "1" through "79."

81.     In the event the Court determines that the Plaintiff has not authorized Defendants to reproduce, distribute, publicly perform or in any way release, recompile, upload, download or make available the Unauthorized Copies or Illegal CD, Defendants should be permanently enjoined from reproducing and distributing the Illegal CD or any other medium or device which embodies the Recordings, or which includes the Compositions.

82.     Additionally, Defendants should be enjoined from advertising, promoting or otherwise misinforming the public that they will be releasing the Illegal CD or the Unauthorized

392830.1

Copies, since such a representation would permit Defendants to improperly exploit Eminem's popularity and Plaintiff's copyrights for their commercial benefit.

83. None of the Defendants have requested the permission of Eminem or Mannix or Shady Records for any reason with regard to the release of the Illegal CD. The reproduction and distribution of the Illegal CD and the Unauthorized Copies has caused and will continue to cause irreparable harm to Plaintiff by improperly stripping Plaintiff, the lawful copyright holder, of its right to control such reproduction, distribution including the determination as to when, if ever, to first use the Compositions or Recordings for artistic or financial gain.

84. Plaintiff has no adequate remedy at law.

## COUNT V

### Accounting to Recover Royalties

85. Plaintiff repeats and incorporates the allegations of paragraphs "1" through "84."

86. By virtue of Defendants' illegal and unauthorized distribution of the Plaintiff's copyrighted material, Defendants are required to pay Plaintiff royalties and damages, measured in part by the profits (direct and indirect) that Defendants have received from the improper exploitation of Plaintiff's intellectual property.

87. Plaintiff is unable to determine the amount of money owed by Defendants to Plaintiff unless Defendants furnish Plaintiff with an accounting.

88. Defendants, in an effort to cheat Plaintiff out of the royalties which have been and will be earned, refuse to furnish Plaintiff with a true and accurate accounting although Plaintiff has demanded that Defendants do so.

89. Plaintiff has no adequate remedy at law.

## COUNT VI

### Unjust Enrichment

90.     Plaintiff repeats and incorporates the allegations of paragraphs "1" through "89."

91.     In the event the court allows Defendants to exploit the Compositions or Recordings, either by releasing the Illegal CD or by continuing to distribute the Unauthorized Copies through its web site, Plaintiff has conferred a benefit upon Defendants.

92.     In the event the court allows Defendants to exploit the Unauthorized Copies as noted above, Defendants have retained such benefit without adequately compensating Plaintiff therefor.

93.     Defendants should not in equity and good conscience be permitted to retain the benefit bestowed upon them by Plaintiff.

94.     As a result of the retention of such benefit, Defendants have been unjustly enriched and are jointly and severally liable to Plaintiff.

95.     As a result of the unjust enrichment of Defendants, Plaintiff has incurred damages in an amount to be determined at trial, plus applicable interest, attorneys' fees and costs.

WHEREFORE, Plaintiff Shady Records, Inc. demands judgment against Defendants as follows:

1.     That the Court find that Defendants have infringed on Plaintiff's copyrights in the Compositions and Recordings.

2.     That the Court declare that there has been no first use or publication of the Compositions by Plaintiff, the copyright owner.

3.     That the Court find a substantial likelihood that Defendants will continue to infringe Plaintiff's copyrights in the Compositions and Recordings unless enjoined from doing so.

4.     That Defendants, their agents, employees, and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing Plaintiff's copyrights in the Compositions and Recordings, or any other compositions or recordings of Eminem now illegally in their possession, or continuing to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived, copied and/or sampled from the Unauthorized Copies, in whatever medium, or to participate or assist in any such activity.

5.     Ordering Defendants, and all its representatives, agents, servants, employees, officers, directors, partners, attorneys, subsidiaries, and all persons under their control or acting in active concert or participation with them to immediately post a notice on their web site stating that the prior posting of the Compositions and/or the Recordings was unauthorized and illegal.

6.     That Defendants be enjoined and directed to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all originals, copies or duplicates of any work shown by the evidence to infringe any copyright in the Recordings, including any and all copies of the Illegal CD or any other compositions or recordings of Eminem now illegally in their possession.

7.     That judgment be entered for Plaintiff and against Defendants for Plaintiff's actual damages according to proof and for any profits attributable to infringements of Plaintiff's copyright, in accordance with proof.

392830.1

15

8.     That judgment be entered for Plaintiff and against Defendants for statutory damages based upon Defendants' acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

9.     That all gains, profits and advantages derived by Defendants from its acts of infringement and other violations of law be deemed to be held in constructive trust for the benefit of Plaintiff.

10.    That Defendants be ordered to furnish to Plaintiff a complete and accurate accounting of all profits earned in connection with their release of the Unauthorized Copies or their use of the Compositions.

11.    That Plaintiff have judgment against Defendants for Plaintiff's costs, disbursements and attorneys' fees pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

12.    That the Court grant such other, further and different relief as the Court deems just, proper and equitable under the circumstances.

Dated: New York, New York
         February 13, 2003

Yours, etc.

FISCHBEIN·BADILLO·WAGNER·HARDING

*Attorneys for Plaintiff
Shady Records, Inc.*

By: _____
        BRUCE N. LEDERMAN (BNL6371)

909 Third Avenue
New York, New York 10022
Voice: (212) 826-2000
Fax:    (212) 644-7485

392830.1