*Ex. A-5*
*102*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**ORIGINAL**

------------------------------------------------------x
:
SHADY RECORDS, INC.,                                  :
:
Plaintiff,                   :    CASE NO.    2:04CV.72295 (RHC)
:
v.                           :
:
SOURCE ENTERPRISES, INC., DAVID MAYS,                 :
RAYMOND SCOTT p/k/a RAY BENZINO, and                  :    **DECLARATION OF**
BLACK ENTERPRISE/GREENWICH STREET                     :    **KENNETH G. SCHWARZ**
CORPORATE GROWTH MANAGEMENT LLC,                      :
:
Defendants.                  :
:
------------------------------------------------------x
:
SOURCE ENTERPRISES, INC.,                             :
:
Counterclaimant,             :
:
v.                           :
:
SHADY RECORDS, INC.,                                  :
:
Counterclaim Defendant.  :
------------------------------------------------------x

I, **KENNETH G. SCHWARZ**, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a partner in the law firm of Fischbein•Badillo•Wagner•Harding,
counsel to the Plaintiff Shady Records, Inc. ("Shady Records").

2.      I respectfully submit this Declaration to: (a) place before the court certain
exhibits in opposition to the Source Parties' Memorandum of Law in support of their Motion to
Compel the Deposition Testimony of Shady Records' private investigator, Gregory Wier.

3.      Annexed hereto as Exhibit "A" is a true and accurate copy of the
Temporary Restraining Order dated December 15, 2003 issued by the Honorable Judge Gerard

E. Lynch in a case pending in the United States District Court, Southern District of New York under Case No. 03CV.9944.

4.     Annexed hereto as Exhibit "B" is a true and accurate copy of the transcript of a hearing held on December 22, 2003 before the Honorable Judge Gerard E. Lynch in connection with Plaintiff's motion for a Preliminary Injunction.

5.     Annexed hereto as Exhibit "C" is a true and accurate copy of the Modified Temporary Restraining Order issued by the Honorable Judge Gerard E. Lynch on or about December 23, 2003.

6.     Annexed hereto as Exhibit "D" is a true and accurate copy of the Opinion and Order dated June 7, 2004 issued by the Honorable Judge Gerard E. Lynch in connection with Plaintiff's motion for contempt against the Source Defendants.

7.     Annexed hereto as Exhibit "E" is a true and accurate copy of the transcript of the June 16, 2004 deposition of Mathew Ruby p/k/a Buttch fingiz.

8.     Annexed hereto as Exhibit "F" is a true and accurate copy of a January 30, 2004 Assignment of certain rights and interest in certain musical compositions from James Deel p/k/a Chaos Kid to Shady Records, Inc.

9.     Annexed hereto as Exhibit "G" is a true and accurate copy of the United States Copyright Registration certificate SRu 516-219 for the work entitled *Oh Foolish Pride*.

10.     Annexed hereto as Exhibit "H" is a true and accurate copy of the United States Copyright Registration certificate SRu 515-208 for the work entitled *So Many Styles*.

11.     Annexed hereto as Exhibit "I" is a true and accurate copy of the United States Copyright Form "CA" filed under SRu 515-209 pertaining to the work entitled *Oh Foolish Pride*.

2

12.     Annexed hereto as Exhibit "J" is a true and accurate copy of a purported license dated October 24, 2003 from Ronald/Robert [*sic*] Bolos to Source Enterprises, Inc.

13.     Annexed hereto as Exhibit "K" is a true and accurate copy of a purported license dated November 4, 2003 from Ronald Bolos and Aaron Nieman to Source Enterprises, Inc.

14.     Annexed hereto as Exhibit "L" is a true and accurate copy of the transcript of the February 16, 2004 deposition of Ronald Bolos II.

15.     Annexed hereto as Exhibit "M" is a true and accurate copy of the transcript of the June 7, 2004 deposition of Aaron Nieman p/k/a ARoc.

16.     Annexed hereto as Exhibit "N" is a true and accurate copy of the June 7, 2004 deposition of Gregory Wier.

17.     Annexed hereto as Exhibit "O" is a true and accurate copy of the non-waiver stipulation placed on the record at the deposition of Gregory Wier.

18.     Annexed hereto as Exhibit "P" is a true and accurate copy of the assignment of rights dated October 30, 2003 from Michael Ruby p/k/a Mannix to Gregory Wier.

19.     Annexed hereto as Exhibit "Q" is a true and accurate copy of the assignment of rights dated October 30, 2003 from Gregory Wier to Shady Records, Inc.

20.     Annexed hereto as Exhibit "R" is a true and accurate copy of the transcript of the May 11, 2004 deposition of Paul Rosenberg.

21.     Annexed hereto as Exhibit "S" is a true and accurate copy of Judge Lynch's April 15, 2004 discovery order.

3

411363.1

22.     I declare, under penalty of perjury under the laws of the United States of America, the foregoing is true and correct.

Dated:     July 2, 2004

KENNETH G. SCHWARZ, ESQ.

411363.1



12/15/03

LYNCH, S

**FISCHBEIN•BADILLO•WAGNER•HARDING**
DONALD N. DAVID (DND-5222)
KENNETH G. SCHWARZ (KGS-6807)
BRUCE N. LEDERMAN (BNL-6371)
BRIAN A. BLOOM (BAB-5722)
*Attorneys for Plaintiff*



FILE NO. 12835/1
CLIENT Shady Source
SUB-FILE Litt Brief
SUB-SUB-FOLDER

909 Third Avenue
~~New York, New York 10022~~
Phone:     (212) 826-2000
Facsimile: (212) 644-7485

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE LYNCH**

------------------------------------------------------------x

SHADY RECORDS, INC.,

                Plaintiff,

            v.

SOURCE ENTERPRISES, INC., DAVID MAYS,
RAYMOND SCOTT p/k/a RAY BENZINO, and
BLACK ENTERPRISE/GREENWICH STREET
GROWTH MANAGEMENT LLC,

                Defendants.

**03 CV - 9944**

CASE NO. _____

**[PROPOSED] TEMPORARY
RESTRAINING ORDER
AND ORDER TO SHOW CAUSE IN
SUPPORT OF PRELIMINARY
INJUNCTION**

------------------------------------------------------------x

## TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION

On December **15**, 2003, the Ex Parte Application for a Temporary Restraining Order

and Order to Show Cause for a Preliminary Injunction came on for hearing before this Court.

Plaintiff Shady Records, Inc. was represented at the hearing by Fischbein•Badillo•Wagner•

Harding; ~~Defendants were represented by~~ *Defendants did not appear.* _____

384059.6

Based on the Civil Complaint filed on December 15, 2003 and the annexed exhibits, the attached Application, Declaration, Affidavit and Memorandum of Law in Support filed by counsel, and the arguments of counsel at the hearing, **IT APPEARS THAT**:

      (1)    Plaintiff is likely to succeed on the merits of its copyright infringement claims; and

      (2)    There is a high probability that Plaintiff will be irreparably injured as a result of Defendants' unauthorized reproduction and distribution of Plaintiff's two musical compositions and recordings of Plaintiff's previously unreleased compositions and recordings, i.e., the musical tracks entitled *Oh Foolish Pride* and *So Many Styles*, as well as the ongoing distribution, marketing, and promotion of the infringing works of Eminem, which intellectual property rights now belong to Plaintiff Shady Records, Inc. (collectively, the "Compositions," "Recordings" and "Illegal CD");[1] and

      (3)    The balance of the equities tips decidedly in Plaintiff's favor since Defendants will not suffer significant injury through entry of the requested relief and apparently will not be deprived of any rights by entry of this Order.

    **IT FURTHER APPEARS THAT** it is necessary to grant this Order on less than 28 days' notice to Defendants because of the immediacy and irreparability of the injury which Plaintiff suffers and may continue to suffer if the relief is not granted, and because Defendants will not be injured significantly as a result of entry of this Order.

    **IT IS THEREFORE ORDERED:**

    1.    Defendants and their agents are hereby **TEMPORARILY ENJOINED AND RESTRAINED**, pending the hearing on the Order to Show Cause for a Preliminary Injunction, from:(a) reproducing, distributing or publicly performing or in any way making

---

    [1]    Unless otherwise indicated, defined terms shall be deemed to have the meaning assigned to them in the Affidavit of Paul Rosenberg, sworn to December 15, 2003, submitted together herewith.

384059.6

available any hard copy or electronic copy whether via electronic stream, any version of the

musical compositions and/or recordings entitled *Oh Foolish Pride* and *So Many Styles*, including

but not limited to any version of or by Eminem or anyone else of such musical compositions

(whether words or music), or recordings, by or for streaming, uploading, downloading, or any

hard-copy or electronic release or reproduction, or any reconfiguration, remix etc. , in any form

or forum or from reproducing any further copies of the musical compositions or recordings, in

any and all media, including but not limited to, tape, albums, CDs, or streams (such as, digital

transmissions) for any purpose, including but not limited to promotional use or for commercial

gain, and from marketing, advertising or promoting same in any way, or from participating in

any way, directly or indirectly, in any such conduct; or (b) advertising or claiming that they will

be providing or distributing a performance of *Oh Foolish Pride* and *So Many Styles* by Eminem,

or by anyone else, for any and all of the purposes in (a) above, and

2.      Defendants and/or their attorneys, agents, or employees shall, within 24

hours of service of a copy of this order, notify *in writing* all agents, contractors, subcontractors,

vendors, publishers or any other person or entity who or which is involved in the conduct set

forth herein, of the existence of this Temporary Restraining Order and shall further direct each

such person or entity, *in writing*, to cease and desist from engaging, or continuing to engage, in

any such conduct; and

3.      Defendants shall show cause at a hearing before this Court in the

Courtroom of the Honorable _Gerard E. Lynch_, United States District Judge for

the Southern District of New York, located at ~~500 Pearl Street~~ 40 Foley Square, Courtroom _6/9_, New York,

New York 10007 on _Dec. 22_, 2003 at _1:00_'clock _p_.m., or as soon thereafter as

the matter may be heard, why a Preliminary Injunction should not be entered, pending final

determination of this action:

(a) Enjoining Defendants and their agents or employees from reproducing, distributing, publicly performing or in any way making available the Compositions or the Recordings at issue herein, or any version thereof, for any purpose including any uploading or downloading by or from Defendants' website or on any other website controlled or owned by any of Defendants' affiliates, agents, employees, or anyone acting under Defendants' control or acting in active concert or participation with Defendants or from participating in any way, directly or indirectly, in any such conduct; and

(b) Enjoining Defendants and all its representatives, agents, servants, employees, officers, directors, partners, attorneys, subsidiaries, contractors, subcontractors, and all persons under their control or acting in active concert or participation with them from reproducing, distributing, creating, burning, producing, releasing and/or recompiling the Compositions or Illegal CD or any other medium which embodies the Recordings, or from participating in any way, directly or indirectly, in any such conduct; and

(c) Ordering Defendants, and all its representatives, agents, servants, employees, officers, directors, partners, attorneys, subsidiaries, and all persons under their control or acting in active concert or participation with them, to deliver forthwith to the Clerk of this Court to be impounded during the pendency of this action the Compositions and Recordings and all copies, in whatever form or medium, of the foregoing Illegal CD or any version thereof; and

(d) Ordering Defendants, and all its representatives, agents, servants, employees, officers, directors, partners, attorneys, subsidiaries, and all persons under their control or acting in active concert or participation with them to immediately post a notice of their web site stating that the prior posting of the Compositions and/or the Recordings was unauthorized and illegal.

4.    Sufficient reason appearing thereafter, the Court in its discretion has

determined that no undertaking is required of Plaintiff; and

5.    Service upon Defendants listed on the attached service list of a copy of

this Temporary Restraining Order and Order to Show Cause, together with a copy of the papers

upon which it is based, shall be accomplished by hand delivery to the addresses set forth in the

attached service list, no later than two (2) days after entry of this Order.  Any answering papers

shall be served by hand delivery on Plaintiff's counsel and filed with the Court on or before

December __19__, 2003.  Any reply papers of Plaintiff shall be served by hand delivery and filed

no later than December __22__, 2003.

Dated: New York, New York
       December 15, 2003

ISSUED AT __5:35__ O'CLOCK IN THE __after__ NOON

_____
U.S.D.J.

17/15/03

<u>SERVICE LIST</u>

Re: <u>SHADY RECORDS, INC. V. SOURCE ENTERPRISES, INC., DAVID MAYS, AND
RAYMOND SCOTT P/K/A RAY BENZINO</u>

**SOURCE ENTERPRISES, INC.**
215 Park Avenue South, 11th Floor
New York, New York 10003

**DAVID MAYS**
35 Union Square
New York, New York 10003

**RAYMOND SCOTT p/k/a RAY BENZINO**
215 Park Avenue South, 11th Floor
New York, New York 10003

**BLACK ENTERPRISE/GREENWICH STREET CORPORATE GROWTH
MANAGEMENT LLC**
850 Third Avenue, 12th Floor
New York, New York 10022

384059.6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                   :

SHADY RECORDS, INC.,              :

            Plaintiff,        :    CASE NO. _03 CV 9944_

                                   :    _JUDGE LYNCH_

               -v.-               :

SOURCE ENTERPRISES, INC., DAVID MAYS, :
RAYMOND SCOTT p/k/a RAY BENZINO, and
BLACK ENTERPRISE/GREENWICH STREET :
CORPORATE GROWTH MANAGEMENT LLC, :

            Defendants.    :

------------------------------------------------------------ x

## EMERGENCY AFFIDAVIT IN SUPPORT OF
## ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

**DONALD N. DAVID, ESQ.**, being duly sworn, deposes and says:

      1.      I am an attorney at law duly admitted to practice in the State of New York

and before this Court and am a member of FISCHBEIN•BADILLO•WAGNER•HARDING, 909

Third Avenue, New York, New York 10022, attorneys for the Plaintiff SHADY RECORDS,

INC. This is an action based on the wrongful distribution of federally copyrighted material

belonging to Plaintiff. As such I am fully familiar with the facts and circumstances as set forth

below.

384059.6

2.     The complete facts of the underlying action are outlined in the Complaint annexed hereto as Exhibit "A."  Additionally, submitted for the Court's ready reference is an affidavit of Paul Rosenberg ("Rosenberg"), Vice President and General Manager of Plaintiff Shady Records, Inc. ("Shady Records") in support of Plaintiff's application for a Temporary Restraining Order and Preliminary Injunction, annexed hereto as Exhibit "B." (the "Rosenberg Affidavit")

3.     Plaintiff has filed applications for registration of the copyright for the recordings (the "Recordings") and composition (the "Compositions") at issue in this action.  A copy of Plaintiff's application, under SRu # 516-219 for the First Recording and First Composition is annexed hereto as Exhibit "C."  A copy of the SR form for the Second Recording and Second Composition will be provided forthwith.

4.     As set forth in the Rosenberg Affidavit, on or about November 18, 2003, Defendants held a televised press conference to publicize one of the Recordings.  At said press conference Defendants played the Recording *Oh Foolish Pride* for the public to hear. Furthermore, Defendants announced that the Recording *Oh Foolish Pride* would be embodied on a CD (the "Illegal CD") which would be included in the February 2004 issue of Defendants' hip-hop news magazine known as "The Source."  A true and correct copy of the transcript of this news conference is annexed hereto as Exhibit "D."

5.     Currently, Defendants are promoting the release of the Illegal CD on their website located at http://www.thesource.com.  The website is promoting the "World Unveiling of Never Before Heard Eminem Track..."  A true and correct copy of a printout of Defendants' homepage from their website is annexed hereto as Exhibit "E."

384059.6

6.      Plaintiff, through your undersigned affiant, sent Defendants a cease and desist letter on December 3, 2003 demanding that they cease and desist their illegal and unauthorized distribution of the Recording.  A copy of said letter is annexed hereto as Exhibit "F."

7.      Despite having been asked to cease and desist from their illegal and unauthorized distribution of the Recordings [being provided for download on Source Enterprises' website] and production of the Illegal CD, Defendants have continued to make the download available to the public in direct violation of Plaintiff's rights as copyright holder. Additionally, upon information and belief, Defendants are continuing to produce the Illegal CD for inclusion in the February 2004 issue of The Source.

8.      To permit Defendants to determine when and how to release this previously unreleased track, constituting property belonging to Shady Records, would be to permit an injury which money alone could not compensate.  This track has never been exploited in the public forum and thus has special value to the Plaintiff and to the artist Eminem. Irreparable harm to Plaintiff would undoubtedly occur if Defendants are allowed to continue their illegal exploitation of Plaintiff's copyright in the Recording as it would destroy the copyright holder's ability to control the release and distribution of the Recording in the public forum.

9.      The Court is respectfully referred to the Memorandum of Law submitted together herewith for the more than ample precedent supporting the presumption of irreparable harm created by unauthorized distribution of intellectual property covered by the Copyright Act.

384059.6

10.    Therefore, Plaintiff seeks a Temporary Restraining Order and a Preliminary Injunction enjoining Defendants:

(1)    From providing the Recordings at issue herein, or any version thereof, for listening or download on Defendants' website or on any other website controlled or owned by any of Defendants' affiliates, agents, employees, or anyone acting under Defendants' control or acting in active concert or participation with Defendants; and

(2)    From creating, burning, producing, releasing and/or recompiling the Illegal CD or any other medium which embodies the Recordings, and any promotion, marketing, or advertising of said Illegal CD or such medium.

11.    Furthermore, Plaintiff is seeking a Writ of Seizure Ordering Defendants, and all its representatives, agents, servants, employees, officers, directors, partners, attorneys, subsidiaries, contractors, subcontractors and any and all persons under their control or acting in active concert or participation with them, to deliver forthwith to the Clerk of this Court, to be impounded during the pendency of this action, the Recordings and all copies, *in whatever form*, of the foregoing Illegal CD or any version thereof.

12.    Plaintiff has made no prior application for this or similar relief in this or any other court.

384059.6

**WHEREFORE**, Plaintiff respectfully requests that the Order to Show Cause be granted and that the Court enter a Temporary Restraining Order enjoining Defendants from: (i) providing the Recordings for listening or download on Defendants' website and (ii) creating, burning, marketing, releasing and/or distributing the Illegal CD or any other medium (or participating in any way in any such act), embodying the Recordings. Additionally, Plaintiff prays that this Court issue a Writ of Seizure for the Illegal CDs and any copy of the Recordings, in whatever medium, currently in Defendants' possession, custody or control. Plaintiff further prays for recovery of the costs of this motion and such other relief to which Plaintiff and its attorneys may be entitled.

DONALD N. DAVID, ESQ.

Sworn to before me this
15th day of December, 2003.

Notary Public

BRIAN A. BLOOM
Notary Public, State of New York
No.01BL6030356
Qualified in Nassau County
Commission Expires Sept. 7, 20___

384059.6

FILE NO. 12535/1

CLIENT *Shady / Source*

SUB-FILE *(or Other)*

X

SUB-SUB-FOLDER _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHADY RECORDS, INC.

Plaintiff,

v.

SOURCE ENTERPRISES, INC., DAVID MAYS,
RAYMOND SCOTT p/k/a/ RAY BENZINO, and
BLACK ENTERPRISE/GREENWICH STREET
CORPORATE GROWTH MANAGEMENT LLC

Defendants.

---

03 CV 9944 (GEL)

MODIFICATION TO AND
EXTENSION OF TEMPORARY
RESTRAINING ORDER DATED
DECEMBER 15, 2003

X

---

**WHEREAS**, the Court entered a Temporary Restraining Order, dated December 15, 2003, attached as Exhibit 1; and

**WHEREAS**, the parties, Plaintiff and The Source Defendants (Source Enterprises, Inc., David Mays, and Raymond Scott p/k/a Ray Benzino), attended a hearing before this Court at 40 Foley Square, Room 619, New York, New York, on December 22, 2003, at 2:00 P.M., on Plaintiff's Order to Show Cause as to why a Preliminary Injunction Should Not Issue; and

**WHEREAS**, pending the evidentiary hearing on Plaintiff's request for a preliminary injunction the parties have stipulated, and this Court orders, that the Temporary Restraining Order shall be extended, subject to the clarifications set forth below.

This Court deems that the following acts by The Source Defendants do not violate the Temporary Restraining Order and constitute "fair use":

A)    The Source Defendants may publish, in print, no more than eight (8) lines, in total, of excerpts of the lyrics of the song(s) as set forth in Exhibit 2

(previously submitted as Exhibit B to Plaintiff's Affidavit of Brian Bloom)

herein; and

B)   The Source Defendants may produce and release audio excerpts of the songs not to exceed twenty (20) seconds, in total.

An evidentiary hearing will be held on Plaintiff's request for a preliminary injunction on

Feb. 9 ____ 2004 at 9:30 A.M. ~~P.M.~~

The parties do not waive any arguments in support of or against a preliminary injunction or trial on the merits, and the parties reserve all rights, remedies and defenses available at law and in equity.

SO ORDERED:

_____
U.S.D.J.

# 1477448_v1

2



3CM6SHAC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK

2   ------------------------------x

3   SHADY RECORDS, INC.,

4              Plaintiff,

5         v.               03 CV 9944(GEL)

6   SOURCE ENTERPRISES, INC.,

7             Defendant.

8   ------------------------------x
                        New York, N.Y.

9                        December 22, 2003
                        4:45 p.m.

10

11  Before:

                 HON. GERARD E. LYNCH,

12

                         District Judge.

13

                    APPEARANCES

14

   FISCHBEIN BADILLO WAGNER HARDING

15       Attorneys for Plaintiff
   BY:  DONALD N. DAVID

16       RICHARD FISCHBEIN
       BRIAN A. BLOOM

17

   HOLLAND & KNIGHT LLP

18       Attorneys for Defendant
   BY:  TAMARA CARMICHAEL

19       JERRY D. BERNSTEIN

20   Also present:  David Mays, CEO of Source Enterprises, Inc.

21

22

23

24

25

3CM6SHAC

1       (Case called; in open court)

2       THE COURT:  Please be seated.

3           Finally, folks, and my apologies but this is what

4   happens when you have a jury out.  We're here pursuant to the

5   plaintiffs' order to show cause for preliminary injunction, and

6   I granted a temporary retraining order essentially to hold us

7   over the weekend until we could have a question quick hearing.

8   I don't know that this is going to be the hearing.  We may or

9   may not need some evidentiary hearing at some future point

10  depending on how this proceeding goes, but I thought it would

11  be very useful to hear from counsel for both sides very early

12  on.

13          Let me clear up some of the preliminary underbrush

14  first.  Ms. Carmichael, your motion for admission pro hac vice

15  is granted.  So we got that out of the way.  The applications

16  to submit things under seal, I was thinking of granting it as

17  to the CD, but since the plaintiffs themselves submitted a CD,

18  there wouldn't be much point in that; that is denied.  With

19  respect to Exhibit 2, it is denied.  I don't know whether that

20  is necessary or not for my purposes; but if it is, then it

21  would be in the nature of the evidentiary submission and I

22  don't see any reason why that should not be done ex parte or

23  under seal.  To the extent that this constitutes the

24  defendant's alleged basis for having any rights in this

25  material, it is right at the heart of this proceeding.  You

3CM6SHAC

1   don't have to submit it if you don't want to submit it; but if

2   you are going to submit it, I don't see any reason why it needs

3   to be submitted under seal.

4           MS. CARMICHAEL:  May I address the court?

5           THE COURT:  On that issue?

6           MS. CARMICHAEL:  Yes, just briefly.  Your Honor, we

7   certainly don't state at all that they're not entitled to it.

8   Our concern in filing these papers over the weekend was that

9   that document is subject to confidentiality provisions at it's

10  core.  So without the opportunity to negotiate a protective

11  order confidentially agreement, turning the document over for

12  attorney's eyes only or under confidentiality agreement for the

13  parties, we weren't at liberty to submit it ex parte.

14          THE COURT:  Well, you can do that if you want to the

15  extent it is just a discovery issue, but to the extent it is

16  going to be something taken by the court as an evidentiary

17  submission, it is going to take a rather more extraordinary

18  showing than anything that has been made so far to keep it

19  under seal.  My views are pretty straightforward with respect

20  to confidentiality provisions.  The discovery process is

21  basically for the parties.  It is not particular for the

22  public.  And things that are exchanged in discovery

23  presumptively they are not filed in the court and they're not

24  presumptively part of the public record.  And if the parties

25  want to agree to keep it confidential, that's up to them.  The

3CM6SHAC

1    only reason it gets out of your hands is because the other side

2    in litigation is entitled to see it.  But if you are going to

3    present things into the public record, the presumption is

4    entirely the reverse.  If there is going to be some proceeding

5    in court and the court is asked to make a decision based on

6    some factual submission, then the ordinary presumption is that

7    that is a public record and something that the public has a

8    right to see in furtherance of its right to checkup on its

9    government and see how it is doing.  So absent some

10   extraordinary justification far beyond that promise some guy

11   you wouldn't tell on him, if it is going to be part of the

12   case, it is going to be in court and therefore in public.

13           Finally, the plaintiffs' motion for attorney's fees

14   and costs in connection with the motion to seal is denied.  I

15   hope you weren't asking for the fees for all, I count, seven

16   people who entered an appearance so far on your side today, but

17   in any case that was one I could have decided without your

18   help.  Instead of seven people working over the weekend, there

19   really didn't need to be.

20           Now, let's get to the merits.  Having perused the

21   papers of both sides, it seems to me the issue in dispute has

22   narrowed considerably.  I hear the defendants -- and I will

23   hear from Ms. Carmichael if I am wrong -- I hear the defendants

24   either saying that they have no intention of putting a CD

25   containing these tracks out with their February issue or else

3CM6SHAC

1   conceding that they have no right to, one or the another, but

2   in either case not objecting to being enjoined from doing that;

3   is that right?

4           MS. CARMICHAEL:   Somewhat, your Honor.   The CD has not

5   been published.   The representations that the CD has been made

6   and distributed are inaccurate supported by the declaration of

7   Dave Mays.   It reads that there can be no CD whatsoever put out

8   in any way, shape or form.   And we have submitted to the court

9   or advised here in court should the court decide an internal

10  relief is necessary pending an evidentiary hearing that the

11  source is permitted to use the materials in a fair use or

12  noninfringing manner.

13          THE COURT:   That's not very much help because I think

14  an injunction has to be reasonably specific so that your

15  clients have an idea of what they are allowed to do and what

16  they are not allowed to do.   So entering an injunction that

17  says you can do whatever after the fact we decide you are

18  allowed to do, but you can't do anything that we decide after

19  the fact wasn't fair use seems to me not to be particularly

20  helpful to either side.   It doesn't give the plaintiffs what

21  they need from an injunction, which is some guarantee that

22  their rights aren't going to be violated and it doesn't give

23  the defendants fair notice as to what it is they are allowed to

24  do and not do.   So it seems to me that we have to do some

25  exploring of what constitutes fair use lest somebody comes and

3CM6SHAC

1    tells me after the fact, Oh, we thought putting out a CD with

2    both tracks on it was fair use.

3        MS. CARMICHAEL:  Your Honor, we would like to do a CD

4    with excerpts that we believe constitutes fair use.  However,

5    for the court to make that decision, if the court is not

6    willing to do so on papers set forth thus far, which the court

7    may or may not do, under Second Circuit case law there is

8    obviously in particular after reading the apply papers and

9    response papers that came through in the last 48 hours, there

10   is a clear factual disputes that requires preliminary

11   injunctions after we submit preliminary discovery in

12   preparation for preliminary injunction hearing.

13       THE COURT:  And what factual dispute is that prey

14   tell?  Because I haven't seen anything particularly since

15   Exhibit 2 has not been submitted that shows any right of the

16   defendant to any copyright in these materials.  If we have got

17   somebody who sold you a cassette, you own the cassette.  That

18   doesn't give you any rights in the material.

19       MS. CARMICHAEL:  There are two grounds upon which it

20   would be fair and/or fair use.  The first is --

21       THE COURT:  I am not talking about fair use yet.  The

22   first issue is whether -- are you saying you agree that you

23   don't have, or at least for purposes of this proceeding, we're

24   not going to have a factual dispute about who owns the

25   copyright?

3CM6SHAC

1    MS. CARMICHAEL:  We do have a factual dispute to -- if

2    the court is going to simply extend a temporary restraining

3    order pending a preliminary junction, then the issues are not

4    going to come into play; but if the court is going to issue a

5    preliminary injunction under Rule 65 and continues until trial

6    on the merits, there is a factual dispute.

7        The source contends they have an assignment whereby

8    these rights were assigned to them by one of the joint authors.

9    There were a number of people in Basement Productions and we

10   believe, but we have to verify through discovery, there were

11   several authors of one or both of these tapes.  There is a

12   factual dispute.  We say we have an assignment, the source, and

13   the plaintiff says he has an assignment and one or both is

14   right.  If there are two assignments, they are joint authorship

15   rights.  If they are competing assignments, there may be a

16   issue of who owns what.

17       THE COURT:  So we're going to have a factual dispute

18   as to who owns this.  Let me put it this way:  You want to do

19   something in your February issue, I take it; is that the point?

20       MS. CARMICHAEL:  Well, if the CD were going to be

21   released, it would be in conjunction with the February issue.

22       Mr. Mays is here.

23       THE COURT:  So when do you need an answer?

24       MR. MAYS:  Your Honor, we are already on schedule to

25   print and begin distribution of the issue this week.  The

3CM6SHAC

1   magazine is being printed -- the actual magazine, we had to

2   hault the CD from being produced.

3            THE COURT:  That gives me an idea.  So Ms. Carmichael,

4   why do you want to postpone a hearing on this until February

5   5th if your client is already being held up in what he wants to

6   do?  Why don't we have that hearing on January 5?

7            MS. CARMICHAEL:  Can you give us one moment, your

8   Honor?

9            (Pause)

10           MS. CARMICHAEL:  As an attorney based upon the facts

11  that we know, there is a group called Basement Productions.

12  There are four members of that group.  And some or all of them

13  are in Detroit or elsewhere throughout the country and so to

14  get to the heart of this, we have to follow up on preliminary

15  investigations.

16           THE COURT:  Why don't you subpoena them all to be here

17  on January 5th and we'll have them all here on January 5th and

18  we'll find the facts.

19           MR. MAYS:  The magazine has to be on the newsstands.

20  There is no way we can wait until January 5 to determine --

21           THE COURT:  No, your lawyers wants to wait until

22  February 5.

23           MS. CARMICHAEL:  I am talking about the CD.

24           THE COURT:  I want to have the hearing on January 5

25  which is considerably sooner than that.  We're not going to

3CM6SHAC

1   have, as far as I can see, a CD unless we thrash it out here as

2   to what fair use is going to be.  So maybe we need to talk

3   about that as to what the terms of the temporary restraining

4   order are going to be.

5         You may be seated.  Nobody has to stand up if they

6   don't feel like standing up.

7         Let's try and get straight what is being proposed and

8   what isn't being proposed.  As far as putting out a CD with

9   these two tracks, it is a no-brainer that on the record before

10  me where there is a considerable showing on the part of the

11  plaintiff of its copyright -- and so far I haven't seen

12  anything on the other side -- that the plaintiff is likely to

13  succeed in establishing its copyright.  With respect to the

14  fair use issue, I can trot through the statutory factors and

15  we'll do that if we get to the point of having to make findings

16  and conclusions; but the key to me is that what plaintiffs

17  claim the defendants wanted do and what the defendants' press

18  conference suggested it wanted to do, plaintiffs didn't make

19  this up out of their heads they got it out of the press

20  conference, which is to put out a CD with these tracks,

21  appropriates the entirety of the plaintiffs' compositions which

22  is far in excess of anything that is to make the newsworthy

23  point that the defendants want to make and quite clearly that

24  would appropriate the entire value virtually of these

25  compositions to the plaintiff.

3CM6SHAC

1    I don't see anything in the defendants' argument that

2  these performances are primitive and therefore have no economic

3  value.  The juvenilia of artist whether they have any artistic

4  value themselves are quite commonly sold in the marketplace for

5  high prices particularly with respect to recordings.  Demo

6  tracks and other uncollected material of famous recording

7  artists gets released and sold all the time.  Witness the

8  latest Beatles CD that is out.  I think clearly there is a

9  value to this material to the plaintiff and that value isn't

10  there anymore if somebody else is out selling CDs along with

11  their magazines that put out those tracks.  So that clearly

12  isn't going to be allowed.

13    Now the question becomes what kind of uses by the

14  defendants will constitute fair use.  And there I am quite open

15  to argument because I don't mow for sure what the answer is and

16  I don't know for sure what is being proposed in terms of what

17  did degree of excerpts are either going to be printed or

18  included on a CD, but let's be very clear that there is going

19  to be no release of the entirety of this material and there is

20  going to be no on the website by hidden links, exposed links,

21  hyper links, Lincoln logs, or any other kinds of links,

22  cufflinks, anything else that is not going to be on the website

23  in its totality.  And the temporary restraining order is going

24  to be continued to prevent those activities.

25    But now I will hear argument what I think is the real

3CM6SHAC

1   issue here, which is what, if anything, do the plaintiffs think

2   the defendants are permitted to do.

3            MR. DAVID:  Your honor, my name is Donald David.  I am

4   from the firm Fischbein Badillo, and I represent plaintiff.

5   Let me, if I might, have a moment explain what our problem is.

6   The best way to do is go back and remember what happened.  You

7   issued your temporary restraining order, we have discussion

8   with plaintiff counsel.  Shortly thereafter the link that

9   existed on the website came down.  The banner stayed, the link

10  came down.  We thought everything was fine.  We discovered then

11  there was a hidden link in another page.  We called defendants'

12  counsel and they were very accommodating and very professional.

13  They said they weren't aware of it, they would try to do

14  whatever had to be done.  My belief at that point in time is we

15  were working along in good faith.

16            The next thing that I know is I believe it was at 3:16

17  I find out that a new link has gone up on the home page of the

18  website so that the old link in the banner had been removed,

19  they had stopped the infringement, but now they started the

20  infringement again by creating a new link, which requires it to

21  have been a deliberate act.  And what you would do is you would

22  click where it with a saying "new videos" and in the new videos

23  next page, you would find the link, a newly installed link to

24  our tracks.

25            Now, the obvious question is why does this concern me

3CM6SHAC

1   and the answer to that is because I don't believe that I can

2   rely purely on good faith. So I suggested to Ms. Carmichael an

3   alternative when we were talking about this and that was that

4   they agreed that before they are going to put anything up --

5   virtually anything up involving these Eminen Songs they let us

6   know so that we can evaluate whether we need to come to the

7   court to solve the problem. If they are marginal, nobody is

8   going to spend the money to come chasing this down; but if it

9   is really something that is significant, then I want the

10  opportunity to present it to the court and say, Hey, I got a

11  problem. That is my proposal if I can. That because much like

12  pornography, fair use is something that we recognize only when

13  we see it, the best thing that would happen if they want to

14  have the opportunity to do this is that they let us know 24 or

15  48 hours in advance as to what they want to do. If we believe

16  it merits the court's consideration, we will then have the

17  burden of coming to go court. If not, they will be able to do

18  what they want.

19          THE COURT: Yes, but as with pornography there is the

20  risk of becoming a censor. I don't know if I want to be in a

21  position of making moment-by-moment news judgments on the

22  editorial copy that the defendant wants to use in its text or

23  website or anywhere else.

24          MR. DAVID: Your Honor, I have any editorial copy they

25  want to use that has nothing do with us.

3CM6SHAC

1      THE COURT:  All right.  That's important to know.

2  You're not challenging or seeking any injunctive relief from

3  anything they do in the text?

4      MR. DAVID:  That is correct.  Our problem, your Honor,

5  is with their quoting extensively from the lyrics.  If you will

6  take a look at Exhibit B to our papers, the affidavit of Bryan

7  Bloom, you will see that one of the things they did was they

8  reproduced the entire lyrics to both works.

9      THE COURT:  It is not quite the entire lyrics.

10      MS. CARMICHAEL:  Is it not the entire lyrics.

11      THE COURT:  I just said that.  I listened to it.

12      MR. DAVID:  Your Honor, I am sorry.  It is virtually

13  the entire lyrics.

14      THE COURT:  Is it I big chunk.  It is more than fair

15  use.

16      MR. DAVID:  I don't know what they call the works of

17  the Basement tapes.  My suspicion -- because they didn't give

18  me a copy of it -- my suspicion is that what we are dealing

19  with is that we are dealing with multiple works that are

20  produced on one tape and therefore to one CD.  I can tell you

21  that track number two, this appears to be the entirety of what

22  we know as track number two, the song *Oh Foolish Pride*.

23      THE COURT:  No, I don't think it is.  I just listened

24  to what you submitted on Exhibit A as what was downloaded from

25  the website and there is more to it.  They took out the less

3CM6SHAC

1    racially inflammatory parts.

2            MR. DAVID:  Your Honor, the only part that I thought

3    was out was at the beginning where it says, Oh foolish pride

4    about 300 times.

5            THE COURT:  There is some stuff about how black and

6    white folks ought to get together on things that is not here in

7    Exhibit D.  I don't know if it matters a whole lot, but the

8    point is this is not the entirety of the lyrics.  Even so I

9    don't think based on anything that I ever seen in the case law

10   that a quotation this extensive would qualify as fair use in

11   the cause of criticism or commentary.  It seems to me rather

12   easy to make the point that the defendants have made in their

13   press conference with paraphrasing or description of a couple

14   of selected quotes.

15           MR. DAVID:  Your Honor, I agree.

16           THE COURT:  The problem is how do we enjoin someone in

17   such a way that they have notice in advance as to what the

18   extent of use is permitted to be, point one with respect to the

19   lyrics and point two with respect to any audio transmission of

20   any excerpt.

21           MS. CARMICHAEL:  Your Honor.

22           THE COURT:  Yes.

23           MS. CARMICHAEL:  There are so many factors involved in

24   the various analysis.  I am sure if this court is aware

25   particularly when you look at the Nunez case, which is almost

3CM6SHAC

1    directly analogous of this case post '92 amendment.  Those

2    factors each require submission of evidence and fortunately or

3    unfortunately it is going to require us to get additional

4    discovery so the court can have a fair, accurate and complete

5    record.  We need to look at the issue of how the tapes were

6    obtained.  We need to talk to additional witnesses and get them

7    in front of the court for a preliminary injunction.  We need to

8    look at the newsworthiness of this issue.  And the Nunez case

9    the court looked at the news and extensive publications out in

10   the world to determine that.  That it is not fully development

11   on the record yet.  So in order for the court to make a

12   decision on a preliminary injunction, preliminary injunction we

13   submit there must be an evidentiary hearing and there has to be

14   enough time to take reasonable discovery on that.  It is

15   expedited discovery in preparation for a preliminary

16   injunction.

17            THE COURT:  Well, that is all fine, but then there is

18   a temporary restraining order that keeps your client from doing

19   what it wants to do.  I am trying to expedite this process, but

20   I am not going to dissolve an order and put the defendant in a

21   position to do this kind of extreme infringement that clearly

22   doesn't qualify as fair use such as they have been doing up to

23   now and I don't think is it very helpful to put out an order

24   saying, Don't do anything that is fair use and we'll tell you

25   later if you are in contempt or not.

3CM6SHAC

1        MS. CARMICHAEL:  May we have a moment to speak to our

2    client on a factual issue.

3        THE COURT:  Sure.  I think it would be useful if you

4    had some proposal as to what it is that you do anticipate.  If

5    this issue was already set for the newsstand, then maybe it

6    wouldn't be so hard to let the plaintiff know or let the court

7    know what it is that you plan to use from this.  And then we

8    could make some at least preliminary assessments of whether we

9    have a fight on our hands or don't.

10        MS. CARMICHAEL:  Let us speak with our client for one

11    moment, please.

12        (Pause)

13        MS. CARMICHAEL:  Your Honor, I want to clarify one

14    thing and then make a proposal.  I just want to clarify in my

15    own mind we're talking TBO for preliminary injunction for

16    sometime after February.  With that said, if we can have a

17    moment, what we would like to do is have Mr. Mays just take the

18    mark up that plaintiff filed what is out there so far and I

19    want to represent to the court just for the record that the

20    source and we obviously believe that the full scope of what has

21    been put out thus far in light of the factual record and the

22    specific issues in this case are what is needed for fair use.

23    But given the court's feeling today, we're going have him mark

24    that up and make a handwritten proposal today of what the

25    bottom line core language that he would like to use between now

3CM6SHAC

1    and February 5.

2              THE COURT:  Okay.

3              MR. DAVID:  Your Honor, may I address the court?

4              THE COURT:  Yes.

5              MR. DAVID:  I will give Ms. Carmichael a chance to

6    confer.  I apologize.

7              (Pause)

8              MS. CARMICHAEL:  Your Honor, if I may.

9              THE COURT:  Why don't you start by showing it to your

10   adversary.

11             MS. CARMICHAEL:  Yes, of course.

12             THE COURT:  Maybe they will be happy.

13             MR. DAVID:  Your Honor, if I may, what had been

14   identified to us is approximately 40 percent of the tract

15   number 201 *Oh Foolish Pride*.  All of the excerpts of track

16   number one and there is no transformation indicated of any

17   portion of this.  All right.  They have taken the core of the

18   song in three separate extracts as I said indicating nearly

19   40 percent of the song.  I think that is well beyond fair use.

20   Certainly a portion of this they are entitled to use.

21             THE COURT:  Why don't we start by identifying for the

22   record, I am looking at Exhibit B to the Bloom affidavit.  Why

23   don't you tell me what lines by line number of that exhibit are

24   marked.

25             MR. DAVID:  Yes, your Honor, if I may, all that is

3CM6SHAC

1    identified as track one.

2         MS. CARMICHAEL:  Your Honor, if we can just add too

3    that we're saying that is the entirety of the first song.

4         THE COURT:  We're not saying the entirety of anything.

5    I am marking for the record what pieces you have marked and

6    we'll talk later about what percent of that constitutes.

7         MR. DAVID:  Your Honor, they have taken none of the

8    first stanza of track two.  They have started at line five of

9    the second stanza to the end.

10        May I be together with Ms. Carmichael so we can agree

11   with this?

12        THE COURT:  Yes.

13        MR. DAVID:  To the end of that stanza, in stanza

14   three, they have started at line eight, the word that starts

15   "black girls and white girls" and they go over and take the

16   first two lines on the next page.  They then leave the rest of

17   the stanza three alone.  They then go to stanza four and they

18   take the first 10 lines with the line "combusting rhymes and I

19   am swallowing phlegm."

20        THE COURT:  So when it starts, "I will get straight

21   from the point"?

22        MR. DAVID:  Right.  They take the first 10 lines.

23        THE COURT:  From the beginning to "swallowing phlegm."

24        MR. DAVID:  Right.  That is what they propose to take

25   out of that, your Honor.

3CM6SHAC

1     THE COURT:  And, Ms. Carmichael, just so we

2  understand, these are portions that the defendants want to

3  print verbatim and put on CD?

4     MS. CARMICHAEL:  It was bought to my attention, your

5  Honor, that Exhibit D is slightly different.  I just want to

6  make sure that the court has the correct line.  It is two lines

7  in stanza three "and that's why I am here" to the end of that

8  particular line "because black girls," period.

9     THE COURT:  We're looking at a different exhibit.

10     MS. CARMICHAEL:  We were circling it off.

11     MR. DAVID:  I was reading.

12     MS. CARMICHAEL:  I think it just fell on different

13  pages.

14     MR. DAVID:  Your Honor, let me translate it to our

15  exhibit if you don't mind.  I am sorry.

16     THE COURT:  All right.  It's way too much.  Are you

17  familiar with the movie *Birth of a Nation*?  It runs for two

18  hours.  Why do they regard it as a racist movie?  In order to

19  make the point it is a racist movies most commentaries I have

20  seen manage to take a clip of 30 seconds and it makes the point

21  very effectively out of a movie that runs for an hour and a

22  half.  You are talking about a song that is 30 seconds long and

23  a song that is five and a half minutes long according to the CD

24  that was submitted by the plaintiffs' part of the record that I

25  have listened to and what you are saying is that in order to

3CM6SHAC

1   make the point that this contains racially offensive material,

2   you have got a quote every line that is potentially

3   controversial where describing that content and giving a few

4   select excerpts would really make the point perfectly well.

5           I don't want to be making news judgment here, but to

6   some extent that is what we are doing. We're asking what is

7   fair use in a critical article to expose -- if that is the

8   right word -- the tone of this material. And it doesn't

9   require appropriately, particularly if it is going to be done

10  in the exact form in which this material would be marketed,

11  which is to say a CD, the heart of the composition. If we're

12  talking about what I would imagine is somewhere in the course

13  of a article you quote five or six or seven lines paraphrasing

14  anything else you want to paraphrase and then maybe we can talk

15  separately about whether 10 seconds or 20 seconds of audio on a

16  website is fair use. I don't know of any precedence of audio

17  fair use. But that's kind of what I had in mind.

18

19          MR. MAYS: If I may, your Honor, first of all with

20  respect to the example, a movie is something that is available

21  to the public. Our position in terms of the amount that we

22  would like to be able to use, you know, has to do also with the

23  events that have transpired over the last several weeks since

24  the press conference. The plaintiffs and their side have

25  worked very diligently to try to suppress this information from

3CM6SHAC

1   getting out there, not because they intend to use it

2   commercially, but because of the damage that they feel it will

3   accrue to their client.  What has been happening everywhere

4   that we go people are under the impression we made a song or we

5   made one or two little comments about black women and they have

6   been dismissing it and kind of sweeping it under the rug

7   because they haven't had an opportunity to really understand

8   the full nature of the song and that is why we feel this case

9   is unique from any of the previous cases and we should be able

10   to use more extensive amounts.  Even in the Nunez case, it does

11   allow that the entire amount was used under the fair use.  This

12   was a photograph and this is audio, we argue that there are

13   strong reasons why the public needs to hear the real content of

14   the song.  We cannot paraphrase it.

15        THE COURT:  No, I appreciate the point seems easy to

16   make the point out of X number of lines Y percent of them

17   involved disparaging remarks against black women.  I don't

18   think that is very hard to convey at all by paraphrasing and by

19   description and by selecting a few of the choicest materials to

20   quote.  But once you get into the business of becoming

21   Mr. Mather's publishers without his permission, then what you

22   are doing is selling his song lyrics and what you are doing if

23   you try to put it on a CD or on a download or web page or

24   something is you are becoming his record distributor and you

25   are not allowed to do that and make money at it without his

3CM6SHAC

1    permission.  That is pretty simple.  What you can do is

2    criticize him, what you can do is attack him, what you can do

3    is expose the content of what is here and nobody is objecting

4    to your right to do that; but that is got to be done in a way

5    that doesn't appropriate his property.

6              MR. DAVID:  Your Honor, may I be heard?  I started to

7    say this before but I was afraid Ms. Carmichael wouldn't hear

8    me.  There were statements made before indicating that the CD

9    has not been produced.  In view of that, I would like a

10   specific representation that there are 800,000 CDs floating out

11   there because there was a quote from a source in Newsweek --

12   Newsday indicating there were 800,000 copies of this CD.  If

13   that is not true, I will accept the representation, but I would

14   like it to be made on the record.

15             THE COURT:  Let's hear about that.  Do we have a CD?

16             MS. CARMICHAEL:  It's in the record.  It is in

17   Mr. Mays's declaration, the CDs have not been made.

18             THE COURT:  Does that mean there are no CDs -- there

19   are no more than 10 copies of this CD floating around

20   somewhere.

21             MR. MAYS:  Yes, sir.

22             THE COURT:  Well, I am not sure exactly where we stand

23   here.  It seems to me that there is going to be a continued

24   restraining order.  I don't make any findings here about

25   anybody's good faith.  On the other hand, there is enough of a

3CM6SHAC

1    question in view of the representations that were made at the

2    preconference and in view of what happened with the website

3    over the weekend to make clear that there is a need for a

4    continued restraint.

5            The current restraining order it seems to me is

6    probably overbroad in various ways, and I would be open to

7    suggestions for amendments to the extent that there are

8    specific significances or specific language that the parties

9    either can agree could be exchanged or that the defendant wants

10   to propose.  Because what I am concerned about here and I have

11   made it pretty clear all the way through is that the defendants

12   not be permitted to appropriate the value of these compositions

13   by reproducing them in substantial part even in text and in

14   anything more than the briefest of audio excerpts.

15           I sat with a stopwatch listening to this and I thought

16   that 10 or 20 seconds' worth was more than ample to get the

17   flavor to the extent there is any contention that what you have

18   to do is hear it rather than just see it on the page to

19   appreciate it is not ironic or something of the sort.  But such

20   limited use, as I have already indicated, paraphrase of the

21   content, select quotes amounting to some very minor percentage

22   of the total text seems to me the kinds of fair use that even

23   in an unpublished item would constitute fair criticism.

24           And parenthetically let me say I appreciate this is an

25   unpublished work and there is some special consideration that

3CM6SHAC

1    goes to unpublished works.  But in this case in particular, it

2    seems to me that the argument that it is precisely the need to

3    critique or expose or something of that sort that generates the

4    criticism and newsworthiness I think that weighs on the other

5    side sufficiently to the belief that there could be some fair

6    use.  But fair in this context means extremely limited.

7            Now, what I have got to do it seems to me is to issue

8    a restraining order that does not overly inhibit the

9    defendants' legitimate First Amendment rights and that is

10   sufficiently specific that it doesn't run the defendants into

11   the danger of having to guess at whether they are in violation

12   of injunction.  Of course, the plaintiffs' proposed order that

13   has been in effect so far has the virtue of being clear, but

14   that is the problem being broad.  It is easy to be clear if you

15   say thou shall not do anything.  Now we have to figure out a

16   way to be clear on something else.

17           All right.  Let me have a concrete proposal for a

18   timetable to get back to the court.  If we reconvened next

19   Monday afternoon, would we have the ability sort of thinking of

20   that by a conference by which time the parties would have

21   worked out what kind of use of these materials would be

22   permissible in line with the principles that I described?

23           MS. CARMICHAEL:  Your Honor.

24           MR. DAVID:  Your Honor, might I make if we are going

25   to do it, we do it Friday of this week instead of Monday of

3CM6SHAC

1   this week.  I have not gone on vacation in nearly two years but

2   that is the one week I am on vacation.

3             THE COURT:  Friday the court is closed.

4             MR. DAVID:  Thursday.

5             THE COURT:  Thursday is Christmas.

6             MR. BERSTEIN:  It is even more closed.

7             THE COURT:  I'm not going to be here Thursday or

8   Friday.  I wasn't planning on being here Wednesday.

9             MR. DAVID:  Can we make it a week from Monday?

10            THE COURT:  You got seven lawyers here.

11            MR. DAVID:  Most of those lawyers, if I might, are my

12  juniors who worked hard over the weekend to prepare the reply

13  papers and I gave them the courtesy to come and see the court

14  deal with the issues they presented.  Basically it is myself

15  and --

16            THE COURT:  All right.  I understand the problem, but

17  what I have got to balance here I don't want to have a very

18  broad restraining order in effect that is going to prevent

19  these people from publishing their February issues.  Since the

20  defendants are the ones who are telling me they have to depose

21  everyone under the sun before we can have a preliminary

22  hearing, and that is not going to happen until February, then I

23  have been trying to accommodate that by having the temporary

24  restraining order be under control in some way so that the

25  parties can publish, and we all get on with listening to the

3CM6SHAC

1    music.

2         MS. CARMICHAEL:  Your Honor, in speaking with Mr. Mays

3    just now, he really needs to try -- if we could speak to

4    plaintiffs' counsel for a moment to come at least to at least

5    in word resolved today either by specific quotes or some very

6    limited language along the lines of what the court just said.

7    So if we can have a few moments to speak to counsel.

8         THE COURT:  Sure.  Why don't you go out in the hall

9    and I will deal with another case and you can see whether you

10   can reach some agreement within the parameters that I have been

11   suggesting.

12        (Recess)

13        MS. CARMICHAEL:  We take the position there are two

14   different songs.  They take position there is not.  The

15   plaintiff would like to have seven seconds total for what they

16   consider to be one song -- or two songs.  We would like to have

17   20 seconds per song.  As far as lines and text, the plaintiff

18   would like five lines total, both songs.  We would like five

19   lines per song.  Obviously without favor to bring this up at

20   the preliminary injunction.

21        THE COURT:  Yes.  And indeed by the time we get to the

22   preliminary injunction, maybe you will be able to show that you

23   have the right to everything and then we'll worry about that

24   then.

25        The problem is that the first song in quotes is so

3CM6SHAC

1   fragmentary that it becomes difficult to take an excerpt

2   without taking a very large chunk of it.

3          MS. CARMICHAEL:  This is a 10-minute song in its

4   totality.

5          MR. DAVID:  Your Honor, it is not 10 seconds.  This is

6   the problem I suspect, because remember when we don't have a

7   copy of what they got and --

8          MR. MAYS:  You don't need to.

9          MR. DAVID:  Excuse me.  I don't want to engage in

10  colloquy if I might not your Honor.  We don't have what they

11  have.  I suspect that in fact what has happened they have

12  collapsed different works into one work and they are saying

13  that is what the 10 minutes are.  Of the material that we have

14  presented to you, which is on the CD, which is on the website,

15  it is a very small piece.  And I don't think that I can in good

16  faith agree to that.  I am willing to let them pick any five

17  lines from the works, any 10 seconds from both works, they can

18  do whatever they want with it, but that's what is reasonable.

19         THE COURT:  Okay.  Eight lines, 20 seconds from the

20  total of everything you have got whatever it is.  Since it

21  appears that it is now agreed that the defendants actually have

22  a tape that is rather longer than the excerpts that I have

23  heard, that amount of quotation seems to me to be -- at least

24  for purposes of our rather crude temporary restraining order

25  situation -- an approximation of fair use that will do for the

3CM6SHAC

1  present.  Somebody will reduce that to words that both parties

2  can agree upon and that will be submitted for my signature

3  tomorrow.

4          MR. DAVID:  Your Honor, may I address two housekeeping

5  matters?

6          THE COURT:  Yes.

7          MR. DAVID:  I do not have a copy of whatever CD they

8  were submitting to you and I do not have a copy of the exhibit,

9  number two.  And since they have filed these papers, I believe

10  I am entitled to them.

11          THE COURT:  No, they haven't filed them.  They made an

12  application to file them under seal and I denied it so as far

13  as I know they are not filed.  I only have your CD which is

14  what I have listened to, which I took to be which was on their

15  website.

16          MR. DAVID:  That's correct, your Honor.

17          THE COURT:  Your CD that you wanted file,

18  Ms. Carmichael, was the totality of what the defendants have?

19          MS. CARMICHAEL:  No, what is on these sheets.

20          THE COURT:  It is nearly 5:00 and everybody is going

21  to be getting out of here for the holidays and for Mr. David's

22  vacation, which is well earned.  We're going to have a hearing.

23  I don't know whether it will be February 5, I don't know what

24  my calendar looks like, maybe we can have a phone conference

25  tomorrow after you have conferred a little bit and tried to

3CM6SHAC

1    work out the parameters for things like discovery and things

2    like what the length of the preliminary injunction evidentiary

3    hearing would be. So that we can get together by phone

4    tomorrow afternoon and work out the scheduling of that event,

5    but I do have another matter. I don't want to the keep the

6    reporter past 5:00 and I want to try to make some progress. So

7    2:00 tomorrow afternoon phone conference.

8         MR. DAVID: Should we call in?

9         MS. CARMICHAEL: I will be on vacation also so I will

10   call from --

11        THE COURT: Call in from wherever. Try to confirm

12   tonight. I can't really sit here and try to schedule events a

13   month off without knowing how long they will be and you will

14   know in discussing it with each other things about discovery.

15   I am assuming that the plaintiff is obviously going to be

16   entitled to a copy of what the defendants have and to Exhibit 2

17   from this proceeding and you can work out all your

18   confidentialities stips and everything like that, but while I

19   assume that, I am not relying on it because we haven't really

20   discussed.

21        MR. DAVID: Just to make sure everything is straight,

22   until such time as you sign another order.

23        THE COURT: This order is in effect until we get

24   another order, which we will get sometime tomorrow on phone

25   conference.

3CM6SHAC

1          MR. DAVID:  Thank you, your Honor.

2          MS. CARMICHAEL:  Thank you, your Honor.

3                          oOo

